**Douglas Alan FELDMAN, Appellant,**

v.

**The STATE of Texas.**

**No. 73,654.**

Court of Criminal Appeals of Texas.

Feb. 20, 2002.

Adam L. Seidel, Dallas, for appellant.

Patricia Poppoff Noble, Assist. DA, Dallas, Matthew Paul, State's Attorney, Austin, for state.

## OPINION

COCHRAN, J., delivered the opinion of the Court, joined by KELLER, P.J., MEYERS, PRICE, WOMACK, KEASLER, HERVEY and HOLCOMB, JJ.

We grant rehearing on our own motion and withdraw our prior opinion. Appellant was convicted of capital murder in August 1999. Tex. Penal Code Ann. § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Texas Code of Criminal Procedure article 37.071 §§ 2(b) and 2(e), the trial judge sentenced appellant to death. Art. 37.071 § 2(g).[1] Direct appeal to this Court is automatic. Art. 37.071 § 2(h). Appellant raises twenty-one points of error but does not challenge the sufficiency of the evidence at either stage of trial. Appellant's points of error will be addressed in the chronological order of trial, and the facts will be set out only as necessary to address those points. We affirm.

## CHALLENGES FOR CAUSE

In his ninth, tenth, and eleventh points of error, appellant complains about the trial court's failure to grant his challenges for cause to venirepersons G. Henry, D. Garcia, and R. Martinez, respectively. Specifically, he complains that each had a bias against some phase of the law upon which he was entitled to rely. Art. 35.16(c)(2).

---

1. Unless otherwise indicated all future references to Articles refer to the Code of Criminal Procedure.

To preserve error on denied challenges for cause, an appellant must demonstrate on the record that: 1) he asserted a clear and specific challenge for cause; 2) he used a peremptory challenge on the complained-of venireperson; 3) all his peremptory challenges were exhausted; 4) his request for additional strikes was denied; and 5) an objectionable juror sat on the jury. *Green v. State,* 934 S.W.2d 92, 105 (Tex.Crim.App.1996), *cert. denied,* 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997). The record in this case shows that appellant exhausted all fifteen of his peremptory challenges, requested and received an additional challenge, used that challenge, and again requested, but was denied, further challenges. Appellant then objected to the seating of the twelfth juror, thereby preserving any error for review on appeal.

When the trial judge errs in overruling a challenge for cause against a venireperson, the defendant is harmed if he uses a peremptory strike to remove the venireperson and thereafter suffers a detriment from the loss of the strike. *Demouchette v. State,* 731 S.W.2d 75, 83 (Tex. Crim.App.1986), *cert. denied,* 482 U.S. 920, 107 S.Ct. 3197, 96 L.Ed.2d 685 (1987). Because the record reflects that appellant received an extra peremptory challenge in addition to the fifteen he was granted by statute, appellant can only demonstrate harm by showing that *at least two* of the complained-of challenges were erroneously denied. *Penry v. State,* 903 S.W.2d 715, 732 (Tex.Crim.App.), *cert. denied,* 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995); *Martinez v. State,* 763 S.W.2d 413, 425 (Tex.Crim.App.1988).

When reviewing a trial court's decision to grant or deny a challenge for cause, we look at the entire record to determine if there is sufficient evidence to support the court's ruling. *Patrick v. State,* 906 S.W.2d 481, 488 (Tex.Crim.App.1995), *cert. denied,* 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996). We give great deference to the trial court's decision because the trial judge is present to observe the demeanor of the venireperson and to listen to his tone of voice. *Id.* Particular deference is given when the potential juror's answers are vacillating, unclear or contradictory. *King v. State,* 29 S.W.3d 556, 568 (Tex.Crim.App.2000).

Appellant may properly challenge any prospective juror who has a bias or prejudice against any phase of the law upon which he is entitled to rely. Art. 35.16(c)(2). The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with law. *See, e.g., Patrick,* 906 S.W.2d at 489; *Hughes v. State,* 878 S.W.2d 142, 148 (Tex. Crim.App.1992). Before a prospective juror can be excused for cause on this basis, however, the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views. *Jones v. State,* 982 S.W.2d 386, 390 (Tex.Crim.App.1998), *cert. denied,* 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999).

In point of error nine, appellant complains about prospective juror G. Henry. Specifically, he complains that the trial court erred in denying his challenge to Henry because the prospective juror indicated that: 1) he would automatically answer the future dangerousness issue "yes" based upon his finding of guilt; and 2) he would be more inclined to believe a police officer's testimony over that of a lay witness. Article 37.071 § 2(c), requires the State to prove the future dangerousness and "anti-parties"[2] special issues beyond a

---

2. The "anti-parties" special issue is set out in art. 37.071, § 2(b)(2):

reasonable doubt. Any veniremember who would automatically answer either of those special issues in the affirmative or who would place the burden of proof on the defense is challengeable for cause under Article 35.16(c)(2) for having a bias or prejudice against a law applicable to the case upon which the defense is entitled to rely. *Ladd v. State*, 3 S.W.3d 547 (Tex. Crim.App.1999), *cert. denied*, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). Further, a juror who cannot impartially judge the credibility of the witnesses is challengeable for cause for having a bias or prejudice in favor of or against the defendant. Art. 35.16(a)(9); *see also Jones v. State*, 982 S.W.2d 386, 389 (Tex.Crim.App.1998), *cert. denied*, 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999). We must review the entirety of Henry's voir dire to determine whether there is sufficient evidence to support the court's determination.

The record shows that the prosecutor began Henry's individual voir dire by explaining the process followed at trial and the State's burden of proof. The prosecutor then explained that the procedure at punishment was not to have the jury vote for life or death, but rather to pose to the jurors two questions which they would answer based upon the evidence presented at trial. The prosecutor further explained that the court would then assess punishment based upon the jury's answers to those questions.

As he was explaining the process. to Henry, the prosecutor emphasized that answering the future dangerousness issue required a different analysis than finding a defendant guilty. He also commented that

finding a person guilty did not mean that a juror should then automatically answer the future dangerousness question "yes." Henry indicated that he understood this concept. During later questioning, Henry again agreed that a juror would have to listen to all of the evidence presented before making a decision on the punishment questions.

During his questioning, however, defense counsel asked:

> Now, I want you to assume for a minute that you're sitting on this jury. Okay. I want you to assume for a minute that the State of Texas has proved to you what's on that indictment in front of you, that this man has knowingly and intentionally taken the life of not one person but two people without legal justification or excuse and he either did it one of two ways, either during the same transaction or the same course of conduct or scheme.

> \* \* \*

> Now, when you look at special issue number one, Mr. Henry, having that type of evidence brought to you that convinces you beyond all reasonable doubt that he is guilty of the indictment, do you know how to answer question number one if you've heard that type of evidence?

Given these facts, Henry responded that he would answer the future dangerousness question "yes." Soon after this exchange, defense counsel stated, "The law looks at it a bit differently" and he explained:

> Some people say, well, Mr. Oatman, maybe I'll keep an open mind to the extent that if you, Mr. Oatman, prove to me that he's not a future threat even

[I]n cases in which the jury charge at the guilt or innocence stage permitted the jury to find the defendant guilty as a party under Sections 7.01 and 7.02, Penal Code, whether the defendant actually caused the death

of the deceased or did not actually cause the death of the deceased but intended to kill the deceased or another or anticipated that a human life would be taken.

though he did this, I might be willing to change my mind. Would that be a fair statement?

To this question, Henry responded, "Yes." Defense counsel subsequently asked: "[W]ould it be a fair statement to say if you found that indictment to be true beyond all reasonable doubt that question number one is going to be yes unless I or Mr. Huff or the defense can prove to you that he's not a future threat?" Henry answered, "Yes."

On redirect, the prosecution broached the subject:

Q. [Y]ou understand how the law presumes that question [future dangerousness] to be answered no.

A. Yes, sir.

Q. Okay, just like a person accused of a crime is presumed to be innocent, it's up to us to prove that he isn't innocent. That question is presumed that, even though a person is found guilty of capital murder, that he's not going to be a continuing danger. We have to prove to you that he is.

A. Right.

Q. Okay. It can't be an automatic yes answer.

A. Right.

Q. I know you've heard that a lot of people feel that, you know, if you were to prove a person guilty of killing two people, that they would automatically answer that yes. But people that would automatically answer yes are not going to be qualified for the jury, okay, because the law requires you, after you find a person guilty, to sort of step back, take a breather, come to a stop at this stop sign, and reconsider all the evidence that you've heard both from the first part and then in the second part of the trial before you answer that question. And if you're not convinced be-

yond a reasonable doubt, you know, you may have a situation here where—again, some of the examples are extreme. But you may have a situation where, yeah, a person did knowingly and intentionally kill two people during a liquor store robbery. But once they came out, say the police shot them and paralyzed them. Well, they are guilty of killing two people, but is that guy going to be any type of a continuing danger to society? Don't think so.

A. No.

Q. So you see that there are situations—

A. Right.

Q. —that come up like that.

On re-cross by defense counsel, the following colloquy occurred:

Q. If they prove to you with the kind of evidence and quality of evidence that convinces you beyond all reasonable doubt that that indictment is true, if you know that much about an individual, you're going to know enough about him to answer question number one yes; is that right?

A. That's what I said.

Q. I'm sorry?

A. I said yes.

Q. And you still feel that way?

A. That's not the law, though, I mean, but that's the way I feel. I'm just saying how I feel.

* * *

Q. And that's what I need to know is, are you going to—The way you personally feel about this, Mr. Henry, is there any way that you're going to be able to set aside your personal feelings?

A. Yes, sir. I've got to go with the law, I mean.

Q. Okay. Tell me how you would ever answer special issue number one no when you have found beyond a reason-

able doubt he did what's on the indictment.

A. I don't know. I would have to hear it. I mean I don't know.

Q. Well, because the only thing you've told me was, well, Mr. Oatman, if you proved it to me, it should be no then, right.

A. Right. I mean I'm sure something will come up with witnesses or something. I mean I would just have to hear it, I mean.

The proponent of a challenge for cause has the burden of establishing his challenge is proper. *See, e.g., Howard v. State,* 941 S.W.2d 102, 128 n. 2 (Tex. Crim.App.1996); *Harris v. State,* 784 S.W.2d 5, 25 (Tex.Crim.App.1989); *see also Colella v. State,* 915 S.W.2d 834, 846 (Tex.Crim.App.1995)(Clinton, J., dissenting). The proponent does not meet his burden until he has shown that the venireman understood the requirement of the law and could not overcome his prejudice well enough to follow it. *Id.*

Although Henry initially indicated that he would answer the special issue "yes" if he found the allegations in the indictment to be true, and then said that he would require a defendant convicted of a multiple homicide theory of capital murder to prove that he was not a future danger, he changed his response after the parties explained the law, and he maintained that he would set aside his personal beliefs and follow the law. And in response to the State's questioning, Henry indicated that there were circumstances in which he could find that such a defendant did not pose a future danger. The trial court was in a position to evaluate Henry's responses and was entitled to believe that he could follow the law.

With respect to Henry's opinion regarding the credibility of police officer witnesses, the record shows that Henry stated that he would "lean towards" believing an officer over a lay person. However, Henry also stated during later questioning that he would have to see both witnesses on the stand. Appellant is entitled to jurors who will be genuinely open-minded and subject to persuasion, with no extreme or absolute positions regarding the credibility of any witness. *Jones,* 982 S.W.2d at 389. That Henry was simply more or less skeptical of a certain category of witness did not make him subject to a challenge for cause. *Id.*

Looking at the entirety of the voir dire, we hold that the trial judge did not abuse his discretion in denying appellant's challenge for cause to veniremember Henry. **Point of error nine is overruled.**

Appellant asserts in his tenth point of error that the trial court erroneously denied his challenge for cause to venireperson D. Garcia. Appellant complains that Garcia, like Henry, indicated her bias against the law when she stated that a guilty verdict would automatically lead her to answer the future dangerousness issue affirmatively. Appellant further complains that Garcia would require him to produce evidence of his innocence at trial.

Looking at the record of Garcia's voir dire, we note that the judge and the prosecutor instructed Garcia on the procedure involved in a capital case; Garcia said that she could follow that procedure. During the State's questioning, the prosecutor again explained the punishment questions and emphasized that a juror must consider those questions with an open mind and answer them according to the evidence. Garcia agreed that she would consider all of the facts and circumstances before answering the future dangerousness ques-

tion.[3] However, during questioning by defense counsel, Garcia stated that killing two people during the same transaction or course of conduct was an especially heinous crime in her opinion, and that death was the appropriate penalty. Upon clarification by the prosecutor, Ms. Garcia said that she thought that the defense attorney was asking her about her reasoning process if "there was already evidence to prove" future dangerousness. In a colloquy that followed, she reiterated that she would keep an open mind on the future dangerousness issue:

A. So that's why I said yes to the death penalty. But if, okay, he's killed two people, but yet, at this point right now I don't know any evidence, I can say, I can answer either way, yes or no.

* * *

But I don't automatically say kill, I mean.

Q. Okay. That's exactly what the law contemplates, and I wanted to be sure where you're coming from.

A. Right.

Q. So you're not one of those that says automatically kill him because I've already—

A. Because he killed two people, no.

Depending upon who asked the question, Garcia vacillated on whether she would return an affirmative answer to the future dangerousness issue based solely upon the fact that the defendant was found guilty of two murders. When told by the prosecution that the law required her to keep an open mind, she maintained that she would not automatically answer the future dangerousness issue "yes" in a double murder

situation. The trial court was in a position to view her testimony and was entitled to believe that she could follow the law.

■ With regard to appellant's assertion that Garcia would require him to produce evidence of his innocence, the record reveals that Garcia did indeed indicate that she thought appellant should bring forth such proof. However, when the law was explained to her in a way that she could understand, she admitted that she had been confused and said that she could follow the law requiring the State to prove the defendant's guilt.

Given the record, appellant has failed to meet his burden of showing that the venireperson had a bias or prejudice that would substantially impair her ability to carry out her oath and instructions in accordance with law. See Hernandez, 757 S.W.2d at 753. The trial judge did not abuse his discretion in denying appellant's challenge for cause to veniremember Garcia. **Point of error ten is overruled.**

Because appellant has failed to show that at least two of his complained-of challenges for cause were erroneously denied, he cannot show harm on appeal. Penry, and Martinez, both supra. **Point of error eleven is overruled.**

Appellant complains in points of error twelve and thirteen that the trial court erred in granting the State's challenge for cause to veniremember D. Dreifke in violation of Article 35.16 because the State failed to state the reason for its challenge and because the venireperson never said that she could not follow the law. In point fourteen, appellant claims that Dreifke was

---

**3.** For example, when the prosecutor asked Ms. Garcia if she could keep an "open mind as to either option depending on the facts," she responded:

Well, I guess I have to know what led to all this before I decide death or life.

. . .

I mean he just killed two people, but to me, I don't automatically think he should die unless I hear all the evidence.

improperly challenged based upon her views against the death penalty. *See Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

■■ With regard to points twelve and thirteen, even assuming that the trial court erred in its application of Article 35.16(b)(3), appellant has not shown that the error deprived him of a lawfully constituted jury. Without such a showing, reversal is not required. *Jones v. State,* 982 S.W.2d 386, 394 (Tex.Crim.App.1998), *cert. denied,* 528 U.S. 985, 120 S.Ct. 444, 145 L.Ed.2d 362 (1999). **Points of error twelve and thirteen are overruled.**

■■ On the other hand, whether a venireperson was properly challenged based upon her views of the death penalty is a matter of constitutional dimension and requires a different analysis. *See Jones,* 982 S.W.2d at 390–91. Under *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), a venireperson may be excluded for cause consistent with the Sixth Amendment to the United States Constitution when his views on capital punishment are such that they would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Clark v. State,* 929 S.W.2d 5, 6–7 (Tex. Crim.App.1996), *cert. denied,* 520 U.S. 1116, 117 S.Ct. 1246, 137 L.Ed.2d 328 (1997); *Vuong v. State,* 830 S.W.2d 929, 942 (Tex.Crim.App.), *cert. denied,* 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992); *Moody v. State,* 827 S.W.2d 875, 888 (Tex. Crim.App.), *cert. denied,* 506 U.S. 839, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992). However, prospective jurors may not be excused merely because their beliefs about the death penalty might influence the decision-making process. *Clark, supra.* In reviewing such an issue, we give deference to the trial court's decision to exclude a prospective juror and will reverse only for an abuse of discretion. *See Rocha v. State,* 16 S.W.3d 1, 6 (Tex.Crim.App.2000). Furthermore, we will uphold the trial court's decision when a prospective juror's answers are "vacillating, unclear, or contradictory." *Id.*

■■ Approximately a month prior to Dreifke's individual questioning, the trial judge very briefly explained to the entire venire panel the procedural sequence of a death penalty case. On the day that Dreifke appeared for individual examination, the judge first spoke to the group of veniremembers scheduled for questioning that day and explained the process more in depth. The judge stressed to the veniremembers that a Texas jury is never required to assess a sentence of death or life imprisonment. Rather, the jury would be required to answer two questions, and the answers to those questions would dictate to the judge what punishment should be assessed. The judge then paraphrased the two questions the jury would be required to answer.

At the outset of Dreifke's individual questioning, the prosecutor stressed the seriousness of the State's position in asking for the death penalty. He then asked Dreifke in a variety of ways whether she thought that she was an individual who could participate in such a case knowing that the ultimate result might be the execution of another human being. To each question, Dreifke responded that she could serve on such a jury. As the questioning continued, Dreifke noted that she had started thinking about how such a case would affect her, for example, whether it might scare her or cause her to have recurring dreams. However, she maintained that she "could still answer the [punishment] questions in such a way that would result in the execution of another human being[.]" On the other hand, Dreifke also maintained that she thought that she

would have doubts about whether she could do the job entrusted to her.

Finally, the prosecutor described the actual procedure involved when a person is executed—from the person's life in a small cell to the process of lethal injection. After he finished his explanation, the prosecutor again asked Dreifke whether she could participate in this process. At this time, the venireperson answered that she did not think that she could and to do so would go against her conscience.

The prosecutor then passed the venireperson and appellant said that he had no questions to ask her. After Dreifke had stepped out of the room, the prosecutor challenged her for cause and the trial judge granted the challenge. Appellant's only response was, "Note our exception, Your Honor."

Because Dreifke vacillated on her ability to follow the law and ultimately told the court that she was not sure whether she could perform the duty entrusted her, the trial judge was within his discretion in determining that her views on capital punishment would have prevented or substantially impaired the performance of her duties as a juror in accordance with her instructions and her oath. *Wainwright, supra; see also Rocha,* 16 S.W.3d at 6; *Colburn v. State,* 966 S.W.2d 511, 518 (Tex. Crim.App.1998). **Point of error fourteen is overruled.**

## LESSER–INCLUDED OFFENSE

In his first two points of error, appellant complains that the trial court erred in refusing to instruct the jury on the lesser-included offense of murder. He asserts that this violated Article 37.08 of the Texas Code of Criminal Procedure and his due process rights under the Fourteenth Amendment to the United States Constitution.

 To determine whether a charge on a lesser-included offense should be given, this Court has implemented a two-step test. *See Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985); *Royster v. State,* 622 S.W.2d 442, 444 (Tex. Crim.App.1981) (plurality opinion). The first step is to decide whether the offense is actually a lesser-included offense of the offense charged.[4] *See* Art. 37.09; *see also, e.g., Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Aguilar,* 682 S.W.2d at 558. Murder is a lesser-included offense of capital murder. *See Cardenas v. State,* 30 S.W.3d 384, 392 (Tex.Crim.App.2000); *Moore v. State,* 969 S.W.2d 4, 12 (Tex.Crim.App.1998). Hence, the first prong of the test is satisfied.

The second step of the *Aguilar/Rousseau* test requires that the record contain some evidence that would permit a rational jury to find that the defendant is guilty *only* of the lesser offense. *Moore,* 969 S.W.2d at 8; *Rousseau,* 855 S.W.2d at 672. In other words, there must be some evidence from which a rational jury could acquit the defendant of the greater offense

---

4. Article 37.09 defines a lesser-included offense:

An offense is a lesser included offense if:
 (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
 (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
 (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
 (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

while convicting him of the lesser-included offense. *Moore*, 969 S.W.2d at 8. The evidence must establish the lesser-included offense as a valid rational alternative to the charged offense. *Wesbrook v. State*, 29 S.W.3d 103, 113–14 (Tex.Crim.App. 2000), *cert. denied*, 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001).[5]

The evidence in the instant case showed that during the late night hours of August 24, 1998, appellant was riding his motorcycle down Highway 75 in Collin County. Appellant was positioned in the right hand lane near the shoulder when Robert Everett, traveling at least seventy to seventy-five miles per hour in his eighteen-wheeler truck, suddenly passed appellant and then moved into appellant's lane, passing only twelve to eighteen inches from appellant's left hand. Appellant, initially in fear for his life, became enraged and gave chase because he felt that he "needed to stop that man." During the chase, appellant took out a weapon and fired several rounds into the back of Everett's trailer. When Everett continued driving, appellant reloaded his gun, drove along side the truck's cab, and fired several times directly at Everett, killing him.

After the shooting, appellant stopped for a period of time [6] in a mall parking lot off the highway. He then rode back to where Everett's truck had stopped to determine whether Everett was dead. Appellant then headed for home. After riding approximately eleven miles, however, appellant passed an Exxon service station where Nicolas Velasquez, a tanker truck driver for Exxon, was refilling the gas supply for the station.[7] Velasquez had just finished filling the ground tanks and was walking towards the service station entrance when appellant drove into the station area and shot Velasquez twice in the back, killing him. Appellant finally drove home.

Over a week later, Antonio Vega was standing outside a Jack in the Box restaurant at 1:15 p.m. talking on a pay telephone when appellant, driving a silver Land Rover, drove by and opened fire, injuring Vega. A nearby witness noted appellant's license number and reported the information to the police. When officers apprehended appellant, they recovered a loaded nine-millimeter weapon, an additional pistol magazine, a Glock pistol, seventy-five hollow-point bullets, and one hundred ninety four round nose bullets. Another loaded magazine was recovered from appellant's pocket. Testing on the first weapon and on the spent shell casings from the three crime scenes confirmed that this weapon had been used at all three locations.

Appellant was indicted for killing Nicolas Velasquez by shooting him with a firearm and, during the same criminal transaction, killing Robert Stephen Everett by shooting him with a firearm. In the alternative, appellant was indicted for killing

---

**5.** In *Arevalo v. State*, 943 S.W.2d 887, 889 (Tex.Crim.App.1997), this Court explained why the evidence raising a lesser-included must provide a viable and *rational* alternative to the greater offense:

> The second prong of the test preserves the integrity of the jury as the factfinder by ensuring that the jury is instructed as to a lesser included offense only when that offense constitutes a valid, rational alternative to the charged offense. If a jury were instructed on a lesser included offense even

though the evidence did not raise it, then the instruction "would constitute an invitation to the jury to return a compromise or otherwise unwarranted verdict."

**6.** The evidence showed that the total elapsed time between the two murders was 45 minutes.

**7.** Appellant was apparently in Dallas County at that time.

Nicolas Velasquez by shooting him with a firearm and, during a different criminal transaction but pursuant to the same scheme and course of conduct, killing Robert Stephen Everett by shooting him with a firearm.[8] After his arrest, but prior to trial, appellant admitted responsibility for the shootings in letters that he mailed from jail to a police detective and to one of the prosecutors working on the case. In the letter to the police detective, appellant stated that the murders resulted from a traffic altercation with Everett, "after which [appellant] erupted in rage and subsequently committed the attacks[.]"

Appellant also testified at trial and admitted shooting the victims. Appellant told the jury about the traffic altercation with Everett and his decision to shoot Everett instead of allowing him to go speeding down the highway. He noted that he returned to Everett's truck because, "There was a part of me that wanted to make sure Mr. Everett was dead." Even as he testified at trial, appellant admitted that he was still angry about the incident. He explained that he shot Velasquez because he saw him standing beside an eighteen-wheeler, and "I exploded again in anger[.]"

Appellant was charged at trial with both alternative theories alleged in the indictment and the jury found him guilty "as charged in the indictment." *See* TEX. PENAL CODE § 19.03(a)(7)(A) and (a)(7)(B). When the State has tried a defendant on an indictment in which alternative theories of capital murder are alleged, the defendant is entitled to a requested lesser-included offense charge if a rational jury could convict him only on the lesser-included offense after considering each of the alternative theories of commission. *See Arevalo v. State,* 970 S.W.2d 547, 548–49 (Tex.Crim.App.1998).[9]

Under the first theory alleged, the jury was authorized to convict appellant if it found that he had murdered both victims during the same criminal transaction. *See* TEX. PENAL CODE § 19.03(a)(7)(A). Although the legislature did not define the term "same criminal transaction" in the statute, this Court has interpreted that phrase to mean "a continuous and uninterrupted chain of conduct occurring over a very short period of time … in a rapid sequence of unbroken events." *Jackson v. State,* 17 S.W.3d 664, 669 (Tex.Crim.App. 2000); *Rios v. State,* 846 S.W.2d 310, 311–312 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 1051, 113 S.Ct. 1946, 123 L.Ed.2d 651

---

8. Under either theory, appellant would be guilty of capital murder for killing two different people under Tex. Penal Code § 19.03(a)(7) either:

 (A) "during the same transaction; or
 (B) during different transactions but the murders are committed pursuant to the same scheme or course of conduct."

9. As this Court explained in *Arevalo:*

 In the instant case, the State presented evidence on all three theories of aggravation [from sexual assault to aggravated sexual assault], and the jury charge required the jury to find only one of the three to convict of aggravated sexual assault. If the evidence was disputed on only one of those

theories and the evidence on the remaining two was uncontested, the jury could not rationally find Appellant guilty only of the lesser. Therefore, we hold that if sufficient evidence of more than one theory of the greater offense is presented to allow the jury to be charged on alternate theories, the second prong of the *Royster/Aguilar* test is satisfied only if there is evidence which, if believed, refutes or negates every theory which elevates the offense from the lesser to the greater. *See Schweinle v. State,* 915 S.W.2d 17, 19–20 (Tex.Cr.App.1996). Only if every theory properly submitted is challenged would the jury be permitted to find the defendant guilty only of the lesser offense.
970 S.W.2d at 548–49.

(1993); *Vuong v. State,* 830 S.W.2d 929, 941 (Tex.Crim.App.1992), *cert. denied,* 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992).

■ At trial, the evidence showed that appellant became enraged by Everett's driving and proceeded to chase him down and shoot him. He then went to a parking lot for a while before returning to the scene to see if his victim was dead. After this, appellant, by his own claim, started to drive home. It was only when he saw a tanker truck parked at a service station along the way that appellant again lashed out in anger, killing another person. The total amount of time between the two murders was approximately 45 minutes. From this evidence, a rational juror could have concluded that there was in fact a sufficient break between the two murders such that they did not occur in a "sequence of unbroken events." Hence, a rational jury could have acquitted appellant of this theory of capital murder under these facts.

■ However, a finding that the murders could have been committed during different criminal transactions does not mean that the jury could have found appellant guilty *only* of murder. The jury in the instant case was also authorized to convict appellant of capital murder if it found that the murders were committed during *different* transactions, but pursuant to the same scheme or course of conduct. *See* TEX. PENAL CODE § 19.03(a)(7)(B). Hence, to be entitled to a lesser-included offense charge of murder in this case, appellant must also show that the record contains some evidence that would have allowed a rational jury to find that he did not murder Velasquez and Everett pursuant to the same scheme or course of conduct. *See Arevalo,* 970 S.W.2d at 549 (to

be entitled to lesser-included, defendant must point to evidence that negates every alternate theory of liability for the greater offense). Appellant agrees with this proposition of law. His contention is that there was *some* evidence from which a rational jury could have concluded that the two murders were not part of the same scheme or course of conduct.

This Court noted in *Corwin v. State,* 870 S.W.2d 23, 28 (Tex.Crim.App.1993), *cert. denied,* 513 U.S. 826, 115 S.Ct. 95, 130 L.Ed.2d 44 (1994), that the sponsors of the bill that became this penal provision intended subsection (B) to embrace "serial" murders. The Revised Bill Analysis for the legislation gave as an example of same scheme or course of conduct one who, "e.g. kills all Senators over the course of a year for snubbing his legislation." *Id.* The evidence in this case shows that appellant became enraged because of a truck driver's behavior and so he killed him. Appellant's own testimony then indicated that he became enraged anew when he saw the second truck driver later that same night and, therefore, he killed him. The jury was then presented with evidence of a third attack a little more than a week later on a person appellant thought was a truck driver.[10]

Appellant points to his trial testimony that he killed the first truck driver because that driver almost ran him down, but that he had no motive at all for killing the second truck driver. Therefore, he argues, his testimony of the second "motiveless" murder is "some evidence" from which a rational trier of fact could rationally conclude that these two murders were not committed pursuant to the same scheme or course of conduct. We disagree. The appellant did not dispute that he killed both truck drivers in the same

**10.** Appellant testified that he saw a diesel truck parked near where Vega was using the

phone. Therefore, appellant thought that he might be a truck driver.

evening with the same gun while out on a single car trip. He shot and killed the first truck driver with four gunshots to the chest and back and the second victim with two gunshots to the chest and back. He admitted that he shot the first truck driver in a fit of rage for "what he did," and that when he saw the second truck driver he "exploded in anger" again and drove by and shot him as well.

Given this evidence, a rational jury could only conclude that appellant's behavior in killing both truck drivers was committed pursuant to the same over-arching objective or motive and, hence, was committed pursuant to the same scheme or course of conduct. *See Corwin*, 870 S.W.2d at 28. As such, the jury could not have rationally acquitted appellant of capital murder and convicted him *only* of murder. *See Arevalo*, 970 S.W.2d at 548–49; *see also Wesbrook*, 29 S.W.3d at 113–14; *Moore*, 969 S.W.2d at 8. Because appellant has failed to satisfy the second prong of the *Aguilar/Rousseau* test, the trial court did not err in refusing his request for a lesser-included offense charge of murder. **Appellant's first two points of error are overruled.**

## EVIDENCE OF EXTRANEOUS ACTS

Appellant complains in his third, fourth, and fifth points of error that the trial court erred by allowing the State to introduce evidence during the guilt/innocence phase of an unadjudicated extraneous offense that appellant committed just over a week after the offense alleged in the indictment. Specifically, appellant complains about testimony concerning the aggravated assault of Antonio Vega.

Texas Rule of Evidence 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove a person's character or that a person acted in conformity with that character. However, such evidence may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Faced with an objection, the proponent of such evidence must satisfy the trial court that the extraneous act has relevance apart from its tendency to prove character conformity.[11] *See Santellan v. State*, 939 S.W.2d 155, 168 (Tex.Crim.App. 1997); *McFarland v. State*, 845 S.W.2d 824, 837–838 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). If the proponent succeeds in his task, then the trial court has discretion to admit the evidence. *Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim.App.1990) (op. on reh'g). If, however, the trial court determines that the proponent has not met his burden or decides that the evidence has no relevance apart from character conformity, then the evidence is not admissible, and the trial court has no discretion in the matter. *Id.*

While the trial court may decide that the evidence is admissible under Rule 404(b), it may nevertheless exclude that evidence if it determines that the probative value of the extraneous act evidence is substantially outweighed by unfair prejudice. TEX.R. EVID. 403. However, the trial court need not engage in this balancing test unless the opponent of the evidence further objects based upon Rule 403. *Montgomery* and *McFarland*, both *supra*. When the trial court balances probativeness and prejudice, a presumption

---

**11.** "Relevant evidence" is evidence which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less prob-

able than it would be without the evidence." TEX.R. EVID. 401. Evidence which is not relevant is not admissible. TEX.R. EVID. 402.

exists favoring probative value. *Montgomery*, 810 S.W.2d at 389.

■ So long as the trial judge "operates within the boundaries of [his] discretion," an appellate court should not disturb his decision, whatever it may be. *Montgomery*, 810 S.W.2d at 390. In other words, as long as the trial court's ruling is within the zone of reasonable disagreement, an appellate court will not disturb that ruling. *Montgomery*, 810 S.W.2d at 391.

■ Appellant conceded in the instant case that he killed the two victims named in the indictment. However, he disputed that he committed the murders in the same criminal transaction or during the same scheme or course of conduct. In presenting evidence about the Vega assault/attempted murder, the State was able to present to the jury evidence that made the existence of this fact more probable by revealing appellant's common "anti-truck driver" motive or a common scheme behind the shootings.

Further, the record reveals that early in the State's case-in-chief, the prosecutor read to the jury a letter appellant had written and sent to Detective Phil Harding with the Dallas Police Department. Appellant stated in this letter:

I am responsible for the criminal mischief which occurred at Central Volkswagen on 8/23/98 (shooting of windows & vehicles), as well as the shooting deaths (murder) of Mr. Robert Stephen Everett (8/24/98) and Mr. Nicolas Velasquez (8/25/99) [sic] as well as the attempted murder of Mr. Antonio Vega (9/5/98).

I have no excuse for my actions other than that I was in a state of extreme emotional distress at the time. I had an altercation in traffic with Mr. Everett, after which I erupted in rage & subsequently committed the attacks mentioned above.

This admission, along with the minimal evidence of the facts and circumstances of the Vega assault which the State later admitted through the testimony of an eyewitness, made the fact that the Everett and Velasquez murders were committed during the same transaction or scheme or course of conduct more likely. Hence, the evidence had relevance apart from character conformity, and the judge acted within his discretion in allowing it. *Montgomery, supra.*

■ While we recognize that evidence of an extraneous offense will usually be somewhat prejudicial, we cannot say, given the totality of the evidence in the instant case, that the testimony was substantially more prejudicial than probative. Because the trial judge was not outside the zone of reasonable disagreement in allowing the testimony, we will not disturb his ruling on appeal. *Montgomery, supra.* **Points of error three through five are overruled.**

■ Towards the end of the guilt/innocence phase of trial, appellant took the stand in his own defense. He now advances in points of error six through eight that the trial court erred in allowing the State to cross-examine him about extraneous offenses which he committed more than twenty years before the offense for which he was currently on trial. A defendant who takes the witness stand may be cross-examined and impeached in the same manner as any other witness. *Huffman v. State*, 746 S.W.2d 212, 219 (Tex.Crim.App.1988). Indeed, a defendant may be contradicted, impeached, discredited, attacked, sustained, bolstered, made to give evidence against himself, cross-examined as to new matters, and treated in every respect as any other witness. *Id.* Furthermore, an appellant who "opens the door" to otherwise inadmissible evidence

risks having that evidence admitted and used against him. However, the party offering the evidence may not "stray beyond the scope of the invitation." *See Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim.App.1997).

■ In the instant case, the following exchange occurred between appellant and his trial counsel:

[BY DEFENSE COUNSEL:]

Q. At some point in time the next day [the day after the shootings for which appellant was indicted], you were questioned by the Richardson Police Department; is that right?

A. I was.

Q. You had shaved your beard.

A. I had.

Q. Had you cut your hair?

A. No.

Q. No doubt about it, you were trying to change your appearance.

A. That's correct.

Q. Why?

A. I've been in trouble before and I was concerned that, you know, I was in serious trouble.

Q. Did you know you had done something wrong?

A. I felt that way, yes.

Before the prosecutor conducted cross-examination, the court took a recess and discussed a motion in limine in which defense counsel sought to limit questioning about matters not in issue in the case. Specifically, counsel sought to prohibit the State from asking appellant any questions likely or designed to elicit testimony about extraneous offenses. The State specifically sought to ask the defendant to "explain his statement to the jury that he'd 'been in trouble before.'" The trial court overruled defense counsel's objections at that time, instructed the prosecutor to proceed

with caution, and granted defense counsel a continuing objection on the subject. A short way into cross-examination, the prosecutor asked appellant:

[BY THE PROSECUTOR:]

Q. Now, earlier you told this jury here that you'd been in trouble before; is that correct?

A. That's correct.

Q. Can you explain that for us?

A. I was arrested in 1978 on an aggravated robbery charge in possession of narcotics. I was 19 years old. I got a two-year sentence and served it, as well as a ten-year probation which I served and discharged.

Upon further cross-examination, appellant told the prosecutor and the jury about his juvenile arrests, an arrest for driving while intoxicated when he was eighteen, running away from home when he was young, forging credit card receipts and selling marijuana when he was sixteen or seventeen, and an aggravated robbery charge on his adult record.

■ Given the totality of the record, we conclude that the trial court did not abuse its discretion in allowing this testimony. *See, e.g., Schutz*, 957 S.W.2d at 71; *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim.App.1996), *cert. denied*, 520 U.S. 1200, 117 S.Ct. 1561, 137 L.Ed.2d 707 (1997); *Norris v. State*, 902 S.W.2d 428, 442 (Tex.Crim.App.1995). The State's question asking appellant to explain his previous statement about being in trouble did not exceed the scope of the invitation appellant initially gave. Furthermore, every time appellant volunteered additional information, the State was justified in asking for clarification. **Appellant's sixth through eighth points of error are overruled.**

### PAROLE LAW

■ In his fifteenth point of error, appellant complains that the trial court erred

when it informed the jury about the forty year minimum for parole eligibility if a life sentence were assessed, but then further instructed the jury not to consider that minimum in answering the future dangerousness issue. *See* Art. 37.071 § 2(b). Appellant concedes that he failed to object to these instructions, but argues that the "error" caused him egregious harm, necessitating reversal under *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984). This Court has repeatedly held that parole eligibility is not a proper subject for the jury to consider at the sentencing phase of a capital case. *See, e.g., Colburn v. State,* 966 S.W.2d 511, 516 (Tex.Crim.App.1998); *see also, Wesbrook v. State,* 29 S.W.3d 103, 121 (Tex.Crim.App.2000), *cert. denied,* 532 U.S. 944, 121 S.Ct. 1407, 149 L.Ed.2d 349 (2001). Even if we were to assume that the trial court committed error, there is no possibility that the parole instructions caused appellant egregious harm because parole was not an issue applicable to appellant's case. *See, e.g., Collier v. State,* 959 S.W.2d 621, 623 (Tex.Crim.App.1997), *cert. denied,* 525 U.S. 929, 119 S.Ct. 335, 142 L.Ed.2d 276 (1998). **Point of error fifteen is overruled.**

### CONSTITUTIONALITY OF ARTICLE 37.071

In his sixteenth point of error, appellant contends that the trial court failed to define in the punishment charge the terms "probability," "criminal acts of violence," and "continuing threat to society." *See* Art. 37.071 §§ 2(b) and (e). Appellant argues that this failure rendered the charge unconstitutionally vague.

This Court has held repeatedly that the trial court need not define such terms because the jury is presumed to understand them without instruction. *See, e.g., Ladd v. State,* 3 S.W.3d 547, 572–73 (Tex.Crim. App.1999), *cert. denied,* 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). Appellant has given us no reason to revisit these holdings. **Point of error sixteen is overruled.**

In his seventeenth, eighteenth, and nineteenth points of error, respectively, appellant argues that the "12/10 Rule" of Article 37.071 §§ 2(d)(2) and 2(f)(2) is unconstitutional and that the death penalty scheme allows the jury unlimited discretion in violation of the federal and state constitutions. We have previously addressed and rejected these contentions. Appellant raises no new arguments here. *See, e.g., Wright v. State,* 28 S.W.3d 526, 537 (Tex. Crim.App.2000), *cert. denied,* 531 U.S. 1128, 121 S.Ct. 885, 148 L.Ed.2d 793 (2001); *Shannon v. State,* 942 S.W.2d 591, 600 (Tex.Crim.App.1996); *Lawton v. State,* 913 S.W.2d 542, 558 (Tex.Crim.App.1995), *cert. denied,* 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). **Points of error seventeen through nineteen are overruled.**

### CUMULATIVE EFFECT

Appellant asserts in his twentieth and twenty-first points of error that the "cumulative effect" of all of the above errors denied him due process under the federal constitution and due course of law under the Texas constitution. A number of errors may be found harmful in their cumulative effect. *Chamberlain v. State,* 998 S.W.2d 230, 238 (Tex.Crim.App.1999), *cert. denied,* 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000). However, cumulative error has not been shown here. *See Wright,* 28 S.W.3d at 537. **Points of error twenty and twenty-one are overruled.**

We affirm the judgment of the trial court.

JOHNSON, J., concurs.