# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
### NO. 03-06-00515-CR
---

**David Aguilar, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-04-301110, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant David Aguilar of the offense of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.011(a)(2) (West Supp. 2006). The district court assessed punishment at forty-five years' confinement. In three issues on appeal, Aguilar asserts that the district court erred in denying his challenges for cause regarding three prospective jurors. We will affirm.

## BACKGROUND

The underlying facts of this case are uncontested on appeal. A five-year-old girl made an outcry of sexual abuse against Aguilar. Aguilar was subsequently indicted for one count of aggravated sexual assault of a child and one count of indecency with a child by contact. The indictment also alleged prior felony convictions for (1) aggravated assault (threat with a deadly weapon) and (2) burglary of a building and possession of a prohibited weapon.

A focus during jury selection was whether the venire members would be able to disregard Aguilar's decision not to testify. Initially, Aguilar's trial counsel, Mr. Evans, inquired of the venire, "He has a right not to take the stand and incriminate himself. Does anyone have a problem with that right to remain silent? Can everyone afford him his Fifth Amendment right?" At that time, none of the prospective jurors indicated that they had any problems with Aguilar not testifying. However, as Evans inquired further into this matter, some prospective jurors began to express concerns:

> MR. EVANS: Now, he may or may not decide to testify. That's Mr. Aguilar's choice and no one else's. Is there anyone who thinks that once you have been seated up here, once you have gone back into that jury room to deliberate the evidence, is it going to bother you, is it going to keep you from weighing the evidence you have heard if you have not heard from him directly? Mr. Martin?
>
> MR. MARTIN: It's a big handicap in my opinion.
>
> MR. EVANS: Okay. Big handicap. Mr. Martin, I appreciate your answer. Anyone else? Let's see. I'm going to go in order here. Anyone—
>
> MR. SPEICHER: I would agree with that.
>
> MR. EVANS: Okay. Mr. Speicher.
>
> MR. SPEICHER: If he's not willing to testify to refute any charges against him, then it sure makes him look guilty.
>
> MR. EVANS: Okay. Appreciate your answer. Let me ask you this, though: Would it keep you from being a fair and impartial juror on this case? Would it cause you—
>
> MR. SPEICHER: I don't think that would keep me from being fair and impartial, but I certainly think I would listen to the testimony of the defendant as well as the witness to the crime, and if he's not willing to testify, I think it kind of puts him in a hole.
>
> MR. EVANS: Okay.

2

MR. SPEICHER: You know, I remember watching the Watergate hearings and all those guys looked real guilty. So, you know . . . I was just a kid, but nevertheless, they look a lot guiltier when they don't want to answer a question.

MR. EVANS: Certainly.

MR. SPEICHER: Certainly if I was up there, I would answer questions. I would take the stand in my own defense if I was accused of something.

. . . .

MS. TRAYHAN: I feel the same way they do. I think he should testify.

MR. EVANS: Okay. Think he should testify. Okay. Anyone else? Ms. Burrall?

MS. BURRALL: Yes.

MR. EVANS: Same? Same opinion?

MS. BURRALL: Well, he was talking earlier about he said/she said.

MR. EVANS: Yeah.

MS. BURRALL: And it's just a she said. And you were asking earlier why people wouldn't speak when they are being arrested. That's not your opportunity to talk. You were going to get arrested anyway. But this is your opportunity to talk.

After another prospective juror made remarks to the effect that, if a defendant is not guilty, he should "just shout it out," one prospective juror defended the decision not to testify:

MS. CLARK: I think we tend to forget the Fifth Amendment. I think that sometimes, as you said earlier, some people can't speak for themselves. Their words come out all garbled. The intention is not clear. That's why you're in their corner. That's why you, meaning attorney, are their mouthpieces. It's not necessarily that because I don't say anything, I'm guilty. It's that I'm relying on your expertise. We're having conversation. You know more of what I'm saying or should say or what it's all about. I find nothing wrong if you don't particularly want to speak up.

Following Ms. Clark's comment, Ms. Burrall clarified her earlier remarks:

3

MS. BURRALL: I agree with what she's saying, and I also feel that just because he doesn't speak certainly does not mean that he is guilty. But I think that there is a—when people do speak it has a lot of weight, if they are saying that they are innocent.

MR. EVANS: So in other words, if you get up there, you better watch what you say, right?

MS. BURRALL: Well, that's possible.

MR. EVANS: I didn't mean to put words in your mouth, but would you agree with me that's probably accurate?

MS. BURRALL: I know you should be careful when testifying, yes.

After the parties completed their questioning of the prospective jurors, the district court began ruling on the parties' challenges for cause. Aguilar challenged several prospective jurors on the basis of the Fifth Amendment right not to testify. The district court granted Aguilar's challenge to several jurors, including Mr. Martin, the prospective juror who stated that it would be a "big handicap" if Aguilar did not testify. The district court explained that Martin "[d]idn't come up with the magic words, but it was pretty obvious." The following conversation then took place between Aguilar's attorney and the district court:

MR. EVANS: Okay. Judge, we have got—I'm going to try to do these in order. We've got 22, Mr. Speicher, same thing.

THE COURT: That will be denied. I was listening so—

MR. EVANS: Could we bring some of those folks up?

THE COURT: No. You are going to get some, but not that one.

. . . .

THE COURT: You need to be more specific on the questions, Mr. Evans. Nail them down more on some of these. Okay. Go ahead.

4

MR. EVANS: I'm sorry, Judge, I thought I was peppering at the end of it with "would it interfere with your abilities?" Number 26, Ms. Trayhan, same issue. Twenty-seven, Your Honor. I'm sorry, 26, Trayhan.

THE COURT: I put that you didn't quite get there with her.

MR. EVANS: Okay.

THE COURT: She said she had a problem but she said that—some of these people just stated they have a problem, but you didn't get any further with them. Okay.

MR. EVANS: Okay.

THE COURT: Okay. Twenty-six will be denied.

MR. EVANS: Twenty-nine, Your Honor. Burrall.

THE COURT: Same thing with you with Burrall. That will be denied.

After the district court denied Aguilar's challenges to Speicher, Trayhan, and Burrall, Aguilar used three of his ten peremptory strikes on those prospective jurors and the remaining seven on other prospective jurors whom he had challenged for cause.

After the jury had been selected and after the district court asked if there were any objections to the composition of the jury, Aguilar informed the district court that, because he had to exhaust his peremptory strikes on jurors whom he had challenged for cause, two "objectionable individuals" had been seated on the jury. Aguilar then requested "two additional peremptory strikes at this time since we have exhausted all of our peremptories." The district court denied this request.

Trial proceeded, and the jury found Aguilar guilty of aggravated sexual assault as alleged in the indictment.[1] During sentencing Aguilar pleaded true to the enhancement paragraphs

---

[1] The indecency with a child by contact count was submitted as a lesser-included offense within the aggravated sexual assault of a child count.

alleged in the indictment, and the district court assessed punishment at forty-five years' confinement. This appeal followed.

## DISCUSSION

On appeal, Aguilar contends that the district court erred in denying his challenges for cause regarding prospective jurors Speicher, Trayhan, and Burrall. "A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." Tex. Code Crim. Proc. Ann. art. 35.16(a) (West 2006). A prospective juror may be challenged for cause if he has a bias or prejudice against any of the law applicable to the case upon which the defense is entitled to rely. *Id*. art. 35.16(c)(2). "The test is whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with law." *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).

"Before a prospective juror can be excused for cause on this basis, however, the law must be explained to him and he must be asked whether he can follow that law regardless of his personal views." *Id*. The proponent of the challenge has the burden of establishing that the challenge is proper. *Id*. at 747. "The proponent does not meet his burden until he has shown that the venireman understood the requirement of the law and could not overcome his prejudice well enough to follow it." *Id*.

We review a trial court's ruling on a challenge for cause with "considerable deference" because the trial court is in the best position to evaluate the veniremember's demeanor and responses. *Blue v. State*, 125 S.W.3d 491, 497 (Tex. Crim. App. 2003). We will reverse a trial court's ruling on a challenge for cause "only if a clear abuse of discretion is evident." *Id*. "We

6

review the trial court's decision in light of the venireperson's voir dire as a whole. When the record does not contain a clearly objectionable declaration by the venireperson, or the record demonstrates a vacillating or equivocal venireperson, we accord great deference to the trial judge who had the better opportunity to see and hear the person." *Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003). "The trial court is able to consider important factors such as demeanor and tone of voice that do not come through when reviewing a cold record." *Banda v. State*, 890 S.W.2d 42, 54 (Tex. Crim. App. 1994); *Martinez v. State*, 161 S.W.3d 697, 702 (Tex. App.—Austin 2005, pet. granted).

Harm from the erroneous denial of a defense challenge for cause occurs (1) when a defendant exercises a peremptory challenge on a veniremember whom the trial court erroneously failed to excuse for cause at the defendant's request, (2) the defendant uses all of his statutorily allotted peremptory challenges, and (3) the defendant was denied a request for an additional peremptory challenge which he claims he would use on another veniremember whom the defendant identifies as "objectionable" and who actually sits on the jury. *Escamilla v. State*, 143 S.W.3d 814, 821 (Tex. Crim. App. 2004).

The State contends that Aguilar did not preserve error and that the district court did not abuse its discretion in denying his challenges for cause to Speicher, Trayhan, and Burrall. We conclude that the district court did not abuse its discretion in denying Aguilar's challenges for cause and, therefore, need not reach the issue of whether Aguilar preserved error.[2]

---

[2] The requirements for demonstrating harm are sometimes confused with the requirements for demonstrating preservation of error. *See Johnson v. State*, 43 S.W.3d 1, 6 n.6 (Tex. Crim. App. 2001). To preserve error on denied challenges for cause, an appellant must demonstrate that, on the record: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venireperson; (3) all his peremptory challenges were exhausted; (4) his request

7

Aguilar did not meet his burden of showing that prospective jurors Speicher, Trayhan, and Burrall "understood the requirement of the law and could not overcome [their] prejudice well enough to follow it." *Feldman*, 71 S.W.3d at 747. Although all three prospective jurors indicated, to varying degrees, that they believed the defendant "should" testify, none of them indicated that this belief would "substantially impair" their ability to carry out their oath and instructions in accordance with the law. *Id.* at 744. In fact, when Aguilar's attorney directly asked Speicher whether Aguilar's failure to testify would prevent Speicher from being fair and impartial, Speicher stated, "I don't think that would keep me from being fair and impartial."

Trayhan's only comment on the matter was, "I feel the same way they do. I think he should testify." Aguilar never inquired further into Trayhan's beliefs, failing to ask her whether she could follow the law regardless of her personal views. *See id.*

As for Burrall, after one of the other prospective jurors, Ms. Clark, made a comment on the importance of the Fifth Amendment and the defendant's right not to testify, Burrall stated, "I agree with what she's saying, and I also feel that just because he doesn't speak certainly does not mean that he is guilty."

Reviewing their voir dire as a whole, the comments of Speicher, Trayhan, and Burrall appear, at most, unclear, vacillating, and equivocal. On this record, we must defer to the district

---

for additional strikes was denied; and (5) an objectionable juror sat on the jury. *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). In contending that Aguilar failed to preserve error, the State relies on *McBean v. State*, in which the Amarillo Court of Appeals held that the appellant must also notify the trial court of the exhaustion of his peremptories prior to the jury being selected so that the trial court has an opportunity to examine appellant's strike list, reconsider denial of the challenge for cause, and grant the request for another peremptory strike. *McBean v. State*, 167 S.W.3d 334, 339 (Tex. App.—Amarillo 2004, pet. ref'd). We will assume, without deciding, that Aguilar preserved error.

court's discretion in denying Aguilar's challenges for cause. *See Blue*, 125 S.W.3d at 497. We overrule Aguilar's three issues on appeal.

## CONCLUSION

Having overruled Aguilar's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   March 2, 2007

Do Not Publish