Death Opinion














IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-76,176






MICHAEL DEAN GONZALES, Appellant



v.



THE STATE OF TEXAS





ON DIRECT APPEAL FROM CAUSE NO. D-23,730


IN THE 358TH JUDICIAL DISTRICT COURT


FROM ECTOR COUNTY






 Cochran, J., filed a concurring opinion.


O P I N I O N


 

 Had I been the trial judge in this case, I would have granted appellant's challenges for
cause to both venirepersons Sarah Murdock and Randall Phillips. But I was not the trial
judge. And I was not present to see the venirepersons or to gauge their demeanor or
sincerity. In this context, the actual words spoken (or, frequently, misspoken) by a
venireperson do not express the full message that is conveyed by the speaker or received by
the listener. 

 Among those who have participated in death-penalty individual voir dire procedures,
it is common knowledge that potential jurors frequently express extraordinarily strong
beliefs, principles, and attitudes when they fill out the written questionnaires and are first
questioned by the judge and attorneys. It is not their initial thoughts and beliefs that
determine potential jurors' ultimate suitability for service in a death-penalty case. Rather,
it is their ability to temporarily set aside those strong beliefs and follow the law as it is given
to them that determines their fitness. (1) The initial answers on questionnaires are merely a
guide to possible areas that the parties and the judge should discuss with the venireperson. 
And sometimes it is not even the final words spoken by the venireperson that are
determinative. We have all seen those who say "Yes," but the clear import of their total
response is "Absolutely no, never, never." All too frequently the trial judge and lawyers
must judge the fitness of a particular venireperson by a "gut feel" for the ultimate fairness
and open-mindedness of that person. 

 That is why the experienced trial judge pays particularly close attention to the
venireperson's overall attitude toward a specific issue as it is conveyed both verbally and
nonverbally, consciously and unconsciously. The fairness of the entire trial depends upon
this assessment. Thus, reviewing courts must rely heavily upon the good judgment of the
trial judge in deciding whether to grant or refuse a challenge for cause. (2) They, not we, are
"Johnny-on-the-Spot." (3) 

 But coupled with the trial judge's great discretion comes his responsibility to ensure
that any venireperson who might not be fair is removed from the jury panel. There are
always more fish in the sea and more jurors in the jury panel. In close calls, trial judges
should always err on the side of granting a challenge for cause rather than denying one. (4) 
Reviewing courts should not be required to use their scarce judicial resources on reviewing
denials of challenges for cause on "close call" venirepersons in capital cases. (5) It is much
easier and quicker to voir dire yet another venireperson than it is to retry the entire capital-murder case simply because a challenge for cause should have been granted. Denying a
challenge for cause in any "close case" is "penny-wise, pound-foolish" time-savings.

 Furthermore, I agree with Judge Johnson that, even granting the greatest possible
discretion and latitude to the trial judge, the failure to grant a challenge for cause against
venireman Randall Phillips was error for the reasons that she cites. But because the trial
judge gave appellant an extra or "free" peremptory strike, that strike fully compensated for
the error that the judge made concerning Mr. Phillips. (6) 

 As for Ms. Murdock, it is apparent that she was initially confused in her understanding
of the law, especially the law concerning parole. After both the defense and prosecution
explained the law in more depth, she seemed to understand these complicated issues, but
remained adamant that she felt "strongly" that her feelings about parole would affect her
answers to the special issues. At that point, the trial judge interrupted and asked her, point-blank, 

 I am saying to you that you can still have very strong feelings about the death
penalty and still follow the law and follow the instructions of the Court and
follow your oath. . . . And what I have got to know, will you do that?

 

Ms. Murdock responded, "Yes, I will do that." Did she feel intimidated into saying that? 
Did she really mean it? Or was she just going along to get along? We cannot possibly know
from the spoken words themselves as they appear on paper. That is why we give such great
deference to the trial judge's ultimate ruling, confident that the trial judge-who observed the
venireperson's demeanor, listened to her tone of voice and noted any hesitancy-made a
conscientious and careful decision. (7) 

 With these comments, I join the majority opinion.

Filed: September 28, 2011

Publish
1. See, e.g., Smith v. Balkcom, 660 F.2d 573, 578 (5th Cir. 1981) ("All veniremen are
potentially biased. The process of voir dire is designed to cull from the venire persons who
demonstrate that they cannot be fair to either side of the case. Clearly, the extremes must be
eliminated- i.e., those who, in spite of the evidence, would automatically vote to convict or impose
the death penalty or automatically vote to acquit or impose a life sentence.").
2. Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002) ("We give great deference
to the trial court's decision because the trial judge is present to observe the demeanor of the
venireperson and to listen to his tone of voice. Particular deference is given when the potential
juror's answers are vacillating, unclear or contradictory.") (citation omitted).
3. See Mooney v. State, 817 S.W.2d 693, 701 (Tex. Crim. App. 1991) ("Where the trial court
is faced with a vacillating juror . . . elements such as demeanor and tone of voice, etc., are important
factors in conveying the precise message intended. Therefore, the trial court's decision is accorded
great deference.").
4. Jones v. State, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998) (courts should follow the
policy of "the liberal granting of challenges for cause. The venire comprises so many jurors who are
clearly qualified that it is unnecessary to err by denying a challenge for cause on a close question.");
Threadgill v. State, 146 S.W.3d 654, 673-74 (Tex. Crim. App. 2004) (Womack, J., concurring)
(noting the policy set out in Jones and stating that venirepersons in a death-penalty case can easily
be replaced and therefore, in any close case they should be; "I do not say that the trial judge's
decision of this close question of fact was wrong. But it was contrary to the policy that courts should
follow.").
5. See, e.g., Palmer v. State, Nos. PD-1889-05 & 1890-05, 2006 WL 2694226, at *3 (Tex.
Crim. App. Sept. 20, 2006) (not designated for publication) (Womack, J., dissenting). Judge
Womack noted, 

 I repeat what I said for four members of the court in another case of a crying venire
member, when we "f[ou]nd no error because we defer to the trial court's seeing the
jurors' demeanors and hearing the jurors' voices."
 This is a venerable rule for reviewing credibility decisions, to which there is
little alternative in a close case. My question is, why permit close cases in selecting
jurors?

 When a court faces an issue of fact, it must rely on limited sources of
information. Only so many witnesses will have relevant information about a
contested issue of fact. When evidence conflicts, hard choices must be made. The
trial judge is the person whose decision must be respected. But there is ordinarily no
such need when it comes to deciding whether a citizen is qualified for jury service.
If the question is close, the juror can be sent away.

Id. And, when it is a close question, that juror should be sent away, if only to avoid protracted
appellate litigation.
6. See Newbury v. State, 135 S.W.3d 22, 31 (Tex. Crim. App. 2004) (noting that when "a
defendant has been granted an additional peremptory challenge, he must show that two of his
challenges for cause were erroneously denied in order to show that he was wrongfully 'deprived' of
'the use of at least one of his allotted peremptory challenges.'").
7. See Garza v. State, 622 S.W.2d 85, 92 (Tex. Crim. App. 1980) (op. on reh'g) (trial judge
had opportunity to observe prospective juror's tone of voice and demeanor in deciding the precise
meaning she intended to convey; judge did not err in denying challenge for cause to prospective juror
whose voir dire answers indicated that she was prejudiced against anyone who would sell heroin but
who also stated that she could consider granting probation if defendant was found guilty of selling
four pounds of heroin).