OPINION

 

 

                                                             No.
04-03-00819-CR

 

                                                                Ray GONZALEZ,

                                                                       Appellant

 

                                                                             v.

 

                                                             The STATE of Texas,

                                                                       Appellee

 

                                 From
the 399th Judicial District Court, Bexar County, Texas

                                                      Trial
Court No. 2002-CR-4961

                                      Honorable
Juanita Vasquez-Gardner, Judge Presiding

 

Opinion by:       Catherine Stone, Justice

 

Sitting:  Alma L. López,
Chief Justice

Catherine Stone, Justice

Sarah B. Duncan, Justice

 

Delivered and Filed:      December 15, 2004

 

AFFIRMED

            Ray
Gonzalez appeals his conviction and life sentence for capital murder. Gonzalez
presents two issues on appeal: (1) whether he was denied his right to
confrontation when the trial court admitted incriminating hearsay statements
made by an unavailable witness; and (2) whether the trial court erred in
failing to instruct the jury on a lesser included offense.  We affirm. 








Background

On May 3, 2002, the San Antonio Police Department
dispatched officers to the home of Maria and Baldomero
Herrera after receiving two 911 calls from the residence.  Several officers arrived at the residence
approximately six minutes after receiving the second call for assistance.  When they arrived, the officers observed
Maria lying in a pool of blood near the front door.  They also observed Baldomero
sitting in a chair, unconscious and covered in blood.  Upon arriving, the officers questioned Maria
about what had happened, and she responded that she and her husband were shot
by an individual living with or known by the people who live in the rock house
across the street.  Maria told officers
that the gunman was an 18-year-old Latin male with dyed blonde hair.  Maria further indicated that the gunman stole
her white Nissan truck.  

Officers subsequently located Maria=s stolen vehicle and an individual
fitting the description given by Maria. 
After an intense high speed chase, officers apprehended the driver of
the vehicle, Ray Gonzalez.  Upon
apprehending Gonzalez, officers discovered property belonging to the Herreras in Gonzalez=s
pockets and found Maria=s
blood on Gonzalez=s
sneakers.  Gonzalez was charged with
capital murder after Maria and Baldomero died of
their gunshot wounds.  A jury found
Gonzalez guilty of the alleged offense, and Gonzalez was sentenced to  life in prison.

Hearsay
Evidence








Gonzalez complains the trial court erred in
allowing the investigating police officers to testify concerning the statements
Maria made to them upon their arrival at the crime scene.  First, Gonzalez contends Maria=s out‑of‑court statements
do not qualify as excited utterances because they were made in response to
police questioning.  Second, Gonzalez
argues the admission of Maria=s
out-of-court statements violated his Sixth Amendment right to confrontation
because the statements are testimonial and he had no opportunity to
cross-examine Maria before she died.[1]


Hearsay is a statement, other than one made by the
declarant while testifying at a trial or hearing,
offered in evidence to prove the truth of the matter asserted.  Tex.
R. Evid. 801(d).  The Texas Rules of Evidence provide an
exception to this rule for Aexcited
utterances.@  Tex.
R. Evid. 803(2).  An excited utterance is Aa statement relating to a startling
event or condition made while the declarant was under
the stress of excitement caused by the event or condition.@ 
Id.  When determining
whether a hearsay statement is admissible as an excited utterance, we may
consider the time elapsed and whether the statement was in response to a
question.  Zuliani v. State, 97 S.W.3d 589, 595-96 (Tex. Crim.
App. 2003). AHowever,
it is not dispositive that the statement is an answer
to a question or that it was separated by a period of time from the startling
event; these are simply factors to consider in determining whether the
statement is admissible under the excited utterance hearsay exception.@ 
Id. at 596.  The critical factor to consider when
determining if a statement is an excited utterance is A>whether the declarant
was still dominated by the emotions, excitement, fear, or pain of the event=@
or condition at the time of the statement. 
Id. (quoting McFarland v. State, 845 S.W.2d 824, 846 (Tex.
Crim. App. 1992)). 
In other words, a court must determine whether the statement was made A>under
such circumstances as would reasonably show that it resulted from impulse
rather than reason and reflection.=@ Id.  Whether an out‑of‑court statement
is admissible under an exception to the hearsay rule is a matter within the
trial court=s
discretion. Id. at 595. 








The trial court held a hearing outside the
presence of the jury to determine if Maria=s
statements to Officers Thomas McGowan, Dennis Cartwright, and Michael Oliva were admissible. 
Officer McGowan testified that he and Officer Garrett Hunter arrived at
the crime scene approximately six minutes after being notified of Maria=s second 911 call.  When the officers arrived at the Herrera
residence, they observed Maria lying in a pool of blood near the front
door.  They also observed Baldomero sitting in a chair, unconscious,  and gasping for breath.  According to Officer McGowan, Maria was very
talkative and excited.  He further stated
that Maria appeared to be in a state of shock. 
Maria asked the officers to help her several times, although it did not
appear to Officer McGowan that Maria truly understood the seriousness of her
physical condition.  Officer McGowan
stated that Maria Awas doing
a lot of moving on the floor@
and she made several phone calls while lying on the floor.  He further stated that when he questioned
Maria regarding what had happened, Maria could not give him the name of the
shooter; rather, Maria told him that the person who shot her was related to the
people who live in the rock house across the street.  Maria further described the shooter as Aa Latin male . . . blondish colored
hair, about 18 years old.@    

Officer Cartwright arrived at the Herrera
residence shortly after Officers Hunter and McGowan.  Upon his arrival, he too observed Maria lying
on the floor covered in blood.  Officer
Cartwright also observed an elderly gentleman, who appeared to be deceased,
sitting in a chair.  According to
Cartwright, Maria looked in poor condition and in extreme pain.  Maria was crying and asking for help.  Cartwright testified  Maria indicated that a man with dyed
blonde hair shot her and that she recognized the man from the brick or stone
house across the street.  He further
testified that Maria told the officers the shooter stole her truck.   

Finally, Officer Oliva
testified that he arrived at the Herrera residence after Officers Hunter,
McGowan, and Cartwright.  When Oliva arrived, he observed Maria lying on the floor with
blood on her.  Officer Oliva also observed Baldomero
sitting in a chair.  Officer Oliva testified that Maria was frightened and Ain a lot of pain.@ 
Maria appeared to be under the stress of being shot and complained that
her stomach hurt.  Officer Oliva stated he decided to requestion
Maria in Spanish regarding what had happened because it did not appear that she
understood English very well.  According
to Oliva, Maria told him a young Hispanic male with
dyed hair shot her.  Maria further stated
that the shooter lived with or was related to the people living across the
street in the house with a rock exterior. 
When asked what else had happened, Maria told Oliva
that the shooter stole her truck. 








The trial court determined that Maria=s statements to Officers McGowan and Oliva were admissible as excited utterances, and that they
could qualify as present sense impressions and statements of an existing state
of physical condition.  The trial court
further found Maria=s
statements to Officer Cartwright were admissible as well, although the court
did not state the grounds for its ruling. 
On appeal, Gonzalez does not challenge the admission of Maria=s statement that she had been shot or
that she was in pain because he concedes that such statements could qualify
either as excited utterances, present sense impressions, or statements of Maria=s then existing state of physical
condition.  Rather, Gonzalez challenges
the admission of Maria=s
statements concerning who committed the offense, the shooter=s physical characteristics, and the
shooter=s place
of residence.  After reviewing the
evidence, we are of the opinion that Maria=s
statements qualify as excited utterances.[2]

In Ross v. State, the defendant argued that
his victim=s
statements to a co-worker and an ambulance attendant shortly after she was
allegedly shot by the defendant were not excited utterances. 879 S.W.2d 248,
249 (Tex. App.CHouston
[14th Dist.] 1994, pet. ref=d).  There, the defendant shot his girlfriend as
she parked her car outside her employer=s
office.  Id. at
248-49.   One of the victim=s co-workers rushed to the victim=s aid and asked the victim  Awho
shot her?@ Id. at 249. 
The victim identified her boyfriend as the assailant.  Id. 
The victim, while en route to the hospital, then told the ambulance
attendant monitoring her condition that her boyfriend had shot her.  Id. 
The Ross court held that the victim=s
statements identifying her murderer were excited utterances.  Id. 
The court determined the statements constituted excited utterances even
though some of the statements were in response to questions because the victim
was under the stress of being shot four times by her boyfriend; the statements
were made within a relatively short period of time following the shooting;[3]
the severity of the victim=s
injuries suggested that she was Adominated
by the emotions, excitement, fear, and pain of the event at the time she made
both statements@; and the
statements related to the occurrence preceding them.  Id.








In the case at bar, the Herreras
were shot by an assailant a relatively short period of time before police
arrived at their residence.  The
investigating officers all testified that upon entering the Herrera residence,
they observed Baldomero unconscious in a chair and
saw Maria lying on the floor.  Several of
the officers testified that there was blood on or near Maria.  At the time Maria made the statements
implicating Gonzalez, she claimed to be in pain, begged for medical assistance,
and was visibly shaken by what had occurred. 
It is reasonable to infer from this evidence that a startling event had
occurred at the Herrera residence and that Maria was still under the stress
caused by that event when she made the statements relating to the
shooting.  The fact that some of Maria=s statements were in the form of
responses to questions does not make them inadmissible under the excited
utterance exception to the hearsay rule. 
See Zuliani, 97
S.W.3d at 596.  The key is whether
Maria was still dominated by the emotions, excitement, fear, or pain of the
shooting at the time the statements were made, which Maria undoubtedly
was.  See id. 

Although we have concluded that Maria=s statements fall under the excited
utterance exception to the hearsay rule, we must further analyze her statements
in light of Crawford v. Washington, 124 S.Ct.
1354 (2004).  In March 2004, the United
States Supreme Court changed the legal landscape for determining whether
admission of certain hearsay statements violates an accused=s right of confrontation.  Before Crawford, a confrontation
challenge to the admissibility of an out-of-court statement offered against an
accused was governed by Ohio v. Roberts, 448 U.S. 56 (1980).  Under Roberts, an
unavailable witness=s
out-of-court statements could be admitted at trial when the statements
fell under a Afirmly
rooted hearsay exception@
or bore Aparticularized
guarantees of trustworthiness.@
Roberts, 448 U.S. at 66.  The hearsay exception for excited utterances
was considered to be among those Afirmly
rooted@
exceptions that carried sufficient indicia of reliability to satisfy the Sixth
Amendment=s
Confrontation Clause.  See White v.
Illinois, 502 U.S. 346, 355 n. 8 (1992); Penry
v. State, 903 S.W.2d 715, 751 (Tex. Crim. App.
1995).  








Crawford, however, abrogated Roberts
with respect to out-of-court statements that are Atestimonial@ in nature.  Crawford, 124 S.Ct.
at 1374.  The court explained:

Where
nontestimonial hearsay is at issue, it is wholly
consistent with the Framers=
design to afford the States flexibility in their development of hearsay law C as does Roberts, and as would
an approach that exempted such statements from Confrontation Clause scrutiny
altogether.  Where testimonial  evidence is at issue, however, the Sixth
Amendment demands what the common law required: unavailability and a prior
opportunity for cross-examination.

 

Id.  Thus, under Crawford,
the admission of testimonial hearsay violates the Confrontation Clause unless
the declarant is shown to be unavailable to testify
and the defendant had a prior opportunity to cross-examine the declarant.  Id.

The Crawford court declined to provide a
comprehensive definition of Atestimonial,@ although it did note three
formulations of core testimonial evidence: (1) Aex
parte in‑court testimony or its functional
equivalent,@ such as
affidavits, custodial examinations, prior trial testimony not subject to cross‑examination,
or Asimilar pretrial statements that declarants would reasonably expect to be used prosecutorially@;
(2) extrajudicial statements contained in formalized testimonial materials,
such as affidavits, depositions, prior testimony, or confessions; and (3) Astatements that were made under
circumstances which would lead an objective witness reasonably to believe that
the statement would be available for use at a later trial.@ 
Id. at 1364.  The court further noted that A[w]hatever
else the term [testimonial] covers, it applies at a minimum to prior testimony
at a preliminary hearing, before a grand jury, or at a former trial; and to
police interrogations.@  Id. at 1374.  With respect to police interrogations, the
court noted that it used Athe
term >interrogation= in its colloquial rather than any
technical legal, sense.@  Id. at 1365 n.4.








In this case, however, we need not resolve whether
Maria=s
statements to the police were testimonial because Gonzalez forfeited his right
of confrontation under the doctrine of forfeiture by wrongdoing.[4]  In Crawford, the court stated that it
would continue to recognize the doctrine of forfeiture by wrongdoing, which Aextinguishes confrontation claims on
essentially equitable grounds.@  Id. at 1370.  As the Supreme Court explained more than a
hundred years ago: 

The
Constitution gives the accused the right to a trial at which he should be
confronted with the witnesses against him; but if a witness is absent by his
own [the accused=s]
wrongful procurement, he cannot complain if competent evidence is admitted to
supply the place of that which he has kept away. The Constitution does not
guarantee an accused person against the legitimate consequences of his own
wrongful acts. It grants him the privilege of being confronted with the
witnesses against him; but if he voluntarily keeps the witnesses away, he
cannot insist on his privilege. If, therefore, when absent by his procurement,
their evidence is supplied in some lawful way, he is in no condition to assert
that his constitutional rights have been violated.

 








Reynolds v. United States, 98 U.S.145,
158 (1879).  Thus, the doctrine of
forfeiture by wrongdoing Aembraces
the equitable principle that a defendant who has rendered a witness unavailable
for cross‑examination through a criminal act . . . may not object to the
introduction of hearsay statements by the witness on Confrontation Clause
grounds.@  People v. Giles, 19
Cal. Rptr. 3d 843, 847 (Cal. Ct. App. 2004).  In light of this doctrine, we hold that
Gonzalez is precluded from objecting to the introduction of Maria=s statements on Confrontation Clause
grounds because it was his own criminal conduct (in this case, murder) that
rendered Maria unavailable for cross-examination.[5]








Gonzalez argues that a defendant forfeits a
Confrontation Clause objection through wrongdoing only when he is charged with
or is under investigation for a crime, and wrongfully procures the witness=s absence from trial with the intent of
preventing the witness from testifying about that crime.  See United States v. Houlihan,
92 F.3d 1271, 1279-80 (1st Cir.1996) (describing the doctrine of forfeiture by
wrongdoing as applying when the defendant causes a potential witness=s unavailability by a wrongful act
undertaken with the intention of preventing the potential witness from
testifying at a future trial).  Gonzalez
asserts that because there is no evidence he shot Maria with the intention of
preventing her testimony at a future trial, the doctrine of forfeiture by
wrongdoing does not apply.  Although United
States v. Houlihan suggests that the procurement
of the witness=s absence
must be motivated by a desire to silence the victim for the forfeiture by
wrongdoing doctrine to apply, 
we see no reason why the doctrine should be limited to such
cases.  See Giles, 19 Cal. Rptr. 3d at 848.  A defendant whose wrongful act renders a witness unavailable for
trial benefits from his conduct if he can use the witness=s unavailability to exclude otherwise
admissible hearsay statements. 
This is true whether or not the defendant specifically intended to prevent
the witness from testifying at the time he committed the act that rendered the
witness unavailable.[6]  Gonzalez=s
first issue is therefore overruled.

Jury
Charge on Lesser Included Offense

Gonzalez also complains that the trial court erred
in failing to instruct the jury on a lesser included offense.  The trial court=s
charge instructed the jury on capital murder and on the lesser included offense
of aggravated robbery, but did not include Gonzalez=s
requested instruction on the unauthorized use of a motor vehicle, which may be
a lesser included offense of aggravated robbery. See Johnson v. State,
84 S.W.3d 726, 730 (Tex. App.CHouston
[1st Dist.] 2002, pet. ref=d).  Because the court failed to include an
instruction on the unauthorized use of a motor vehicle, Gonzalez contends the
trial court committed reversible error. 
We disagree.

When reviewing charge errors, an appellate court
undertakes a two‑step review: first, the court must determine whether
error actually exists in the charge; second, if the court finds error, it must
determine whether sufficient harm resulted from the error to require
reversal.  Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App. 1984).  When, as here, there has been a timely
objection made at trial, an appellate court will reverse only if Athe error is not harmless.@ 
Id.  In determining the
degree of harm, we look to the entire jury charge, the state of the evidence,
the arguments of counsel, and any other relevant information revealed by the
record.  Hutch v.
State, 922 S.W.2d 166, 171 (Tex. Crim. App.
1996). 








To determine whether Gonzalez was entitled to a
charge on a lesser included offense, we apply a two-prong test.  Feldman v. State, 71
S.W.3d 738, 750 (Tex. Crim. App. 2002).  First, the lesser included offense must be
included within the proof necessary to establish the offense charged.  Id. 
Second, some evidence must exist in the record that would permit a jury
rationally to find that if the defendant is guilty, he is guilty only of the
lesser offense.  Id.  AIn
other words, there must be some evidence from which a rational jury could
acquit the defendant of the greater offense while convicting him of the lesser‑included
offense.@  Id. at 750-51.  The record evidence Amust
establish the lesser‑included offense as a valid rational alternative to
the charged offense.@  Id. at 751.

Although unauthorized use of a motor vehicle may
be a lesser included offense of aggravated robbery, see Johnson, 84
S.W.3d at 730, we do not believe there is any evidence in the record that would
permit a rational jury to find that if Gonzalez is guilty, he is guilty only of
unauthorized use of a motor vehicle.  The
record reveals that before the murders, Alex Aguilar observed Gonzalez and
another person standing outside of the Herreras= residence.  Sometime thereafter, the Herreras
were shot.  When officers arrived at the
scene of the crime, Maria Herrera gave the officers a description  of her assailant and told them that
the assailant stole her truck. 
Authorities located Maria=s
stolen vehicle being driven by an individual fitting the description given by
Maria.  After authorities stopped the
individual (Gonzalez) authorities found property belonging to the Herreras on his person. 
In addition, authorities discovered Maria=s
blood on Gonzalez=s
sneakers.  Based on the testimony, we
cannot say that the record contains evidence that would permit the jury to
conclude Gonzalez is guilty only of unauthorized use of a motor vehicle.  








Nevertheless, even if we were to assume Gonzalez
was entitled to an instruction on the unauthorized use of a motor vehicle, the
trial court=s failure
to give the jury the requested instruction did not harm Gonzalez.  When the jury found that Gonzalez was guilty
of the greater offense of capital murder, the jury necessarily rejected the
theory that Gonzalez was guilty, if at all, solely of the lesser included
offense of aggravated robbery.  Because
unauthorized use of a motor vehicle is a lesser included offense of aggravated
robbery, the jury would necessarily have rejected the theory that Gonzalez was
guilty, if at all, solely of the lesser included offense of unauthorized use of
a motor vehicle.  Conversely, if the jury
had believed Gonzalez was guilty only of unauthorized use of a motor vehicle,
it would most likely not have convicted Gonzalez of capital murder when it had
the option of convicting Gonzalez of aggravated robbery.  Under the facts of this case, Gonzalez was
not harmed by the trial court=s
failure to include a jury charge on the lesser included offense of unauthorized
use of a motor vehicle.  Gonzalez=s second issue is therefore
overruled.  See Saunders v. State,
913 S.W.2d 564, 572 (Tex. Crim.
App. 1995).

Conclusion

Based of the foregoing, we affirm the trial court=s judgment. 

 

Catherine Stone, Justice

 

Publish








 

                                                                              











[1] The Sixth Amendment to the United States Constitution
provides that A[i]n all criminal
prosecutions, the accused shall enjoy the right to . . . be confronted with the
witnesses against him.@  U.S. Const. amend
VI.





[2] Gonzalez conceded during oral argument that Maria=s statements concerning who committed the offense, the
shooter=s physical characteristics, and the shooter=s place of residence were essentially excited
utterances. 





[3] Some of the statements were made minutes after the
shooting while others were made within thirty to forty-five minutes of it.





[4] We seriously question whether the statements Maria
made to the investigating officers can be classified as  Atestimonial@ statements under Crawford.  It appears that testimonial statements under Crawford
have an official and formal quality about them. 
Here, Maria=s statements were not given in a formal setting; given
during any type of pretrial hearing or deposition; contained within a
formalized document of any kind; or made under circumstances which would lead
an objective person to reasonably believe that the statement would be available
for use at a later trial.  See Samarron v. State, No. 04-01-00124-CR, 2004 WL 1932787,
*4-5 (Tex. App.CSan
Antonio Sept. 1, 2004, no pet. h.) (holding witness=s formal, signed, written statement given at the
police station one hour after the crime following structured police questioning
was testimonial).  Admittedly, Maria gave
her statement in direct response to police questioning.  Officers asked Maria what had happened and
Maria responded that she had been shot, gave a physical description of the
shooter, and gave a location where the shooter might be found.  Although the interaction between Maria and
the officers occurred during the course of the officers= Aofficial@ duties,
we are not convinced that investigatory questioning immediately after a crime
has been committed rises to the level of an Ainterrogation.@  An
unstructured interaction between an officer and witness shortly after a
distressing event has occurred, like that which occurred here, simply does not
fit within a lay conception of Ainterrogation.@ See Crawford, 124 S.Ct. at 1365
n.4.  Thus, it is unlikely that
Maria=s statements would be considered testimonial and,
therefore, precluded by Crawford=s Confrontation Clause analysis. 





[5] See id. 
We believe it is of no consequence in this case that the issue of
forfeiture by wrongdoing was not litigated below.  An evidentiary ruling, such as the one
admitting Maria=s out-of-court statements, will be upheld on appeal if
it is correct on  any
theory of law that finds support in the evidence.  Bee v. State, 974 S.W.2d 184, 190
(Tex. App.CSan
Antonio 1998, no pet.).  In future cases,
we encourage the trial courts to consider the forfeiture issue at the time they
are confronted with a Confrontation Clause objection.  When making its forfeiture determination, a
court should consider the evidence admitted up to that point in the proceeding
and, if necessary, hold a hearing outside the presence of the jury to take
additional evidence.  If there is
sufficient evidence to demonstrate  forfeiture, the court should admit the
evidence over the defendant=s objection and set forth on the record its factual
findings that support a forfeiture to allow for a meaningful appellate review
of the forfeiture issue. 





[6] Several courts have applied the forfeiture by
wrongdoing doctrine in cases where the defendant is charged with the same
homicide that rendered the witness unavailable. 
See Giles, 19 Cal. Rptr. 3d at 851
(holding that if the reason the victim cannot testify at trial is that the
accused murdered her, then the accused should be deemed to have forfeited the
confrontation right, even though the act with which the accused is charged is
the same as the one by which he allegedly rendered the witness unavailable); People
v. Moore, No. 01CA1760, 2004 WL 1690247, *4 (Colo. Ct. App. Jul. 29, 2004)
(same); State v. Meeks, 88 P.3d 789, 794 (Kan. 2004) (same).