[No. 2078.]

## JOHN RYAN *v.* THE STATE.

1. PRACTICE—PROOF OF THE VENUE of the offense should not be merely inferential, but should establish that issue beyond peradventure.
2. THEFT—OWNERSHIP—CHARGE OF THE COURT.—See the statement of the case for evidence in a theft case *held* insufficient to establish the allegation of ownership, or that of a fraudulent taking of the alleged stolen property.
3. SAME—PURCHASE of the alleged stolen property was an issue presented by the evidence in this case, and the charge of the court should have embraced that issue.

APPEAL from the District Court of Liberty. Tried below before the Hon. E. Hobby.

The conviction in this case was based upon an indictment which charged the appellant with the theft of one head of cattle,

the property of John West, in Liberty county, Texas, on the first day of May, 1884. The penalty assessed against the appellant was a term of two years in the penitentiary.

John West was the first witness for the State. He testified that, in the year 1884, he owned cattle ranging on the Trinity river, in Liberty county. Some time during the year mentioned, before the witness started on a trip "out west," the defendant, who lived near the witness, and who was familiar with his cattle, told witness that he had 'seen a cow and yearling belonging to witness in the Trinity bottom. He described the animals, and offered to drive them them up for the witness. Witness told him that he could drive them up, but did not agree that he could take either of the animals, one of which is the animal described in the indictment. Shortly after his return from the west the witness saw the cow described to him by defendant in his, witness's, pasture. She had been put in the pasture by Mr. A. B. Hooks, who had witness's authority to do so. Defendant once offered to trade one of his yearlings to the witness for the witness's yearling, which, he said, he knew to be in the bottom. Witness agreed to trade if defendant would drive his yearling up. Defendant never drove his yearling up, nor did he ever mention the trade again. Witness never gave his consent for the defendant to take his yearling and did not know of his own knowledge that defendant ever took it.

Buck Hooks testified, for the State, that in the spring of 1884 he went to the defendant's house and got a cow owned by Mr. John West, which he drove to West's pasture. That cow was the mother of the yearling described in the indictment. Witness saw that yearling, which belonged to Mr. West, in the defendant's pen, and in the defendant's brand. The animal and its mother previously ranged in the Trinity bottom, and Mr. West, before he went "out west," told witness and defendant to drive them to his pasture the first time they or either of them went into the bottom. Witness did not report the facts to which he has testified to the grand jury until he was taken before them at the August term, 1885, of the court. The defendant, just before the grand jury indicted him, took from the witness's pen one of five yearlings which he, defendant, had placed there as security for twenty-five dollars he was due the witness. Witness then turned the other four yearlings out. The four yearlings were ample security for the twenty-five dollars. The same grand jury which indicted the defendant for

this theft indicted him for stealing the yearling he took from witness's pen. That case against the defendant was dismissed. The animal described in the indictment was frosty red in color and about two years old.

Mr. Swearingen testified, for the State, that he and the defendant went into the Trinity bottom, near Mrs. Pipkin's residence, in the spring of 1884, to get some cattle. They brought out a cow belonging to Mr. John West, and also the animal described in the indictment. Witness pointed out that animal as Mr. West's, and defendant said that he had got it from Mr. West. All of the cattle driven out of the bottom by witness and defendant, except the animal described in the indictment, drove very well. That animal was hard to drive. It "broke" several times, and had to be run down with dogs, roped and dragged out on the prairie before it would go with the bunch. At a point on the prairie some distance from the bottom, witness and defendant cut out of the bunch those cattle which did not belong to them and drove their own home. The animal described in the indictment was the only unbranded animal taken by them except the very young calf of West's cow. The bunch of cattle was taken to and penned in the defendant's pasture. On the next morning defendant put his brand on the animal described in the indictment. Witness then left. Mr. P. Tompkins was with the witness and defendant when they got the bunch of cattle from the bottom. The State closed.

George Hanks, jr., was the first witness for the defense. He testified that in the spring of 1884 the defendant and Tompkins and Mr. Swearingen came into the Trinity bottom, near Mrs. Pipkin's place, and drove out a bunch of cattle, including a frosty red two year old animal which belonged to Mrs. Pipkin. Witness had known that animal, and had seen it almost daily from the time it was a week old, and knew as a fact that it belonged to Mrs. Pipkin. On the day after the cattle were driven out of the bottom, Mrs. Pipkin missed her animal, and told witness that it must have been driven off by the defendant, and requested witness to go to defendant's house and tell him that he must either return the animal or pay for it. Witness went to defendant's house during that morning and found Mrs. Pipkin's animal in the defendant's pasture. It had been freshly branded in the defendant's brand. It was the only freshly branded animal in the defendant's pen. Witness delivered Mrs. Pipkin's message,

and defendant replied that the animal was one he got from Mr. John West.

Mrs. S. Pipkin testified, for the defense, that, on the morning after defendant, Tompkins and Swearingen were in the Trinity bottom gathering cattle, she missed an animal, such as that described by the witnesses on this trial. She raised that animal from its birth, and saw it every day until it was taken off by defendant. Missing the animal on the day after defendant was in the bottom, witness sent Mr. George Hanks, jr., to defendant's house to tell defendant he must either pay for the animal or turn it out. Defendant had since paid the witness six dollars for the animal. Witness could not now remember whether that payment was made before or after he was indicted. The amount had been paid, and it was the business only of the witness how it was paid. Prior to the time it was taken by the defendant, the animal was in the witness's pen every night.

P. Tompkins was the next witness for the defense. He testified that he, defendant and Swearingen went into the Trinity bottom near Mrs. Pipkin's place to get out some cattle, in the spring of 1884. While in the bottom, Swearingen pointed out a certain brindle cow and a frosty red yearling or two year old, as the property of Mr. John West. That frosty yearling or two year old belonged to Mrs. Pipkin. Witness had known it since it was a sucking calf, saw it often, and knew that it belonged to Mrs. Pipkin. Witness knew at the time the animal was taken by defendant that it belonged to Mrs. Pipkin. Defendant said at that time that the animal was the John West yearling, and that he got it from West.

The requested instruction referred to in the second head note of this report, which was refused by the trial court, reads as follows: "In order to convict the defendant, Ryan, in this case you must believe, beyond a reasonable doubt, not only that defendant fraudulently took the animal described in the indictment, without the consent of the owner, with the intention of defrauding the owner of the value of said animal, and to appropriate the same to the use and benefit of him, the defendant, but you must also believe, beyond a reasonable doubt, that the animal described in the indictment was the property of John West, and not the property of any one else."

The motion for new trial raised the questions discussed in the opinion.

*S. R. Perryman,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. To say the least of it, it is questionable from the record if the venue of the offense in this case was affirmatively proven upon the trial below. Upon another trial it certainly should be established more definitely.

Appellant was indicted for theft of an animal belonging to one John West. Even if the allegation of ownership had been proven as alleged, then the evidence is by no means conclusive and convincing that defendant stole the same, but, on the other hand, it tends strongly to show that he took it openly, claiming to have traded for it with West. Ownership in West is, however, not sustained by the weight of the testimony. To our minds it seems the preponderance of the evidence goes to establish that the animal, though taken by defendant as the property of West, belonged in fact to one Mrs. Pipkin. With regard to this important question of ownership, defendant's refused special instruction presented the point much more strongly and pertinently than the charge of the court, and, under the peculiar circumstances shown, should, perhaps, have been given.

There was testimony tending to establish a purchase of the animal by defendant, and the charge of the court fails to present this phase of the case. (Ray v. The State, 13 Texas Ct. App., 51.)

Because the evidence fails to establish a fraudulent taking by defendant, and also fails to establish the ownership as alleged in the indictment, the judgment is reversed and the cause remanded.

*Reversed and remanded.*