IN THE COURT OF CRIMINAL APPEALS


OF TEXAS







NO. AP-74,960




ANTHONY DOYLE, Appellant



v.




THE STATE OF TEXAS







ON DIRECT APPEAL

FROM CAUSE NO. F-0345484-JI IN THE CRIMINAL DISTRICT COURT NO. 2


DALLAS COUNTY






Holcomb, J., delivered the opinion of the Court, in which Keller, P.J., Meyers, Price, Johnson, Keasler, and Cochran,
J.J., join. Womack and Hervey, J.J., concur in the result.



O P I N I O N




In May 2004, appellant was convicted of capital murder. Tex. Penal Code Ann. § 19.03(a). Pursuant to the jury's answers to
the special issues set forth in Texas Code of Criminal Procedure Article 37.071, sections 2(b) and 2(e), the trial judge
sentenced appellant to death. Art. 37.071, § 2(g). (1) Direct appeal to this Court is automatic. Art. 37.071, § 2(h). Appellant
raises eleven points of error. We will affirm.

CHALLENGES FOR CAUSE

In his first and second points of error, appellant claims that the trial court erred in denying his challenges for cause of
veniremembers Gary Allen and Teresa Goldsmith. Appellant alleges that Allen was challengeable for cause because he
could not consider the full range of punishment for the lesser-included offense of murder. Art. 35.16 (c)(2). Appellant
alleges that Goldsmith was challengeable for cause because she had a bias or prejudice against the defendant because of her
"inflammatory life experience." Art. 35.16 (a)(9). 

To preserve error for a trial court's erroneous denial of a challenge for cause, appellant must show that: (1) he asserted a
clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of veniremember; (3) all of
his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and, (5) an objectionable juror
sat on the jury. Green v. State, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996), cert. denied, 520 U.S. 1200 (1997). Appellant
has properly preserved error with respect to each of the challenged veniremembers. 

If a defendant establishes error, harm is shown when he has used a peremptory challenge to remove a veniremember and
thereafter suffered a detriment because of the loss of that strike. Demouchette v. State, 731 S.W.2d 75, 83 (Tex. Crim. App.
1986), cert denied, 482 U.S. 920 (1987). Appellant exhausted all of his fifteen peremptory challenges granted by statute
and requested additional peremptory challenges, but that request was denied. 

When reviewing a trial court's decision to deny a challenge for cause, we look at the entire record to determine if there is
sufficient evidence to support the ruling. Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). We give great
deference to the trial court's decision because the trial judge is present to observe the demeanor and tone of voice of the
venireperson. Id. When a veniremember's answers are vacillating, unclear, or contradictory, we accord particular deference
to the trial court's decision. Id. 

Veniremember Allen 

Appellant argues that Allen was unable to consider the full range of punishment for the lesser-included offense of murder.
He asserts that Allen testified that he would be unable to give probation for murder but could give it for manslaughter.
When he was first questioned by the prosecutor, Allen indicated that he could consider the full range of punishment,
including probation, for the lesser-included offense of murder. He agreed that he would keep an open mind while hearing
the evidence and that he would give probation in a case where it was appropriate. 

When defense counsel questioned Allen about this issue, the following exchange occurred: 

Q. How do you feel about the possibility of considering and having to give, if you thought it was appropriate under the
circumstances, punishment as low as five years' probation? 



A. It seems pretty low for a life. If you're considering, you know, a probation sentence for the proven death of someone,
yeah, I think that's pretty low. 



Q. I understand what you're saying. A lot of times, we'll have a lot of jurors come in and say, you know what, to be real
honest with you and be true to my oath and tell the truth, I can't consider that. I can't consider to give that. In a murder case,
I couldn't ever consider and give five years' probation, even if the facts -- if I thought the facts deserved it, I just couldn't do
it because we're talking about the loss of a human life. How do you feel about that?



A. I agree with that.



Q. You just don't think you could do it, or you think you could do it?



A. I don't think I would feel right about probation for a life, no. 



Q. Well, like I said, there are a lot of jurors who tell us that. They say being honest with you and true to my oath, if we're
talking about a murder case, it doesn't matter to me if the person's never been convicted of a felony before, I just don't think
I could ever give a probated sentence. Is that how you feel?



A. Yes.



Q. Do you feel pretty strongly about that?



A. Yes, I do.



Q. Okay.



A. It's almost like saying the first one is free, you know, if you kill someone in my personal opinion.



Q. Can I talk you out of that, or do you fell pretty strong about that?



A. I feel pretty strong about that. 



* * *



Q. You think you could [give probation] for aggravated robbery?



A. Yes.



Q. But you just don't think you could do it for a murder offense?



A. Right.



The trial judge later explained the range of punishment applicable to capital murder cases. He explained that if a defendant
has never been convicted of a felony offense before, the available punishment range could be anywhere from probation for
up to ten years to life in the penitentiary, and a fine not exceeding $10,000. When asked if he could consider the entire
punishment range, Allen answered: "I could. Is that including like manslaughter?" The trial judge explained that the range
is applied to knowing as well as intentional murders. The trial judge then asked Allen if he could consider the applicable
punishment range in the following exchange:

Q. The ultimate decision is left to the jury. Therefore, you have to be able to consider the full range of punishment. 



Is that something you could do, or is that something you could not do?



A. I think I could.



Q. Okay. You could keep your mind open and fairly consider any potential punishment range that could come up before you?



A. Yes. 



Defense counsel challenged Allen for cause, stating that Allen's responses indicated that he could not consider a probated
sentence for murder but only for manslaughter. The trial judge denied the challenge for cause. The trial court's ruling is
supported by the record. Allen ultimately agreed that he could consider the full range of punishment applicable to the case,
including probation, when the trial judge explained the law to him. 

Veniremember Goldsmith

Appellant argues that Goldsmith's "life experiences" were so inflammatory that she could not set them aside and judge the
facts fairly and impartially. The "life experiences" in question were that Goldsmith's grandfather had been the victim in a
capital murder case, that Goldsmith's mother had suffered a "near nervous breakdown" because of that murder, and that
Goldsmith's father had witnessed the defendant's execution. 

When she was first questioned by the prosecutor, Goldsmith acknowledged that the information she had provided in her
questionnaire, that her grandfather had been a victim in a capital murder case, was accurate. When asked if she could put
that experience aside and base this case on the evidence, Goldsmith answered, "Yes." The prosecutor later questioned her
further on the issue:

Q. I asked you, you know, could you put that aside and judge this case.



A. Uh-huh. 



Q. And I just want to make sure, because I know it is a tough thing to have a victim in the family. And I'm not sure how
long ago that happened, but the law is going to require you to set any personal feelings aside and then look at just the
evidence on this case and decide if this person is guilty of this crime. And then, of course, on the punishment, decide death
or life, or answer these questions based on the evidence you hear in the courtroom. Is that something you feel comfortable
with? 



A. Yes, I do, because I've spent a lot of time trying to reconcile the fall out from my grandfather's murder and have done a
lot of reading and have tried to understand from someone's point of view who has committed murder. And I think I've
looked at both sides.



Q. And you think that - -



A. I think I could be objective.



Q. And you could sit as a juror in this type of case?



A. I believe so. 




Defense counsel then asked Goldsmith about the details underlying her grandfather's murder. Goldsmith explained that the
murder took place when she was three years old and that she did not remember much from that time. She explained that her
maternal grandfather, who owned a liquor store, had been shot in a robbery of that store and the shooter received the death
penalty. She explained her mother was thirty-three years old at the time and had experienced a "near nervous breakdown"
because of the murder. She further explained that her father had witnessed the killer's execution. 

When further questioned on this issue, Goldsmith still maintained that she could be a fair juror and impartial in judging the
case: 

Q. Some people would say, you know, I'm past that. I can be a fair juror. You've said I think I can, and I've got to press you
a bit harder here, obviously. I have to know. Can you do it or can you not do it as far as being fair and impartial in judging
this case and this case alone, or will that be a problem for you?



A. Well, of course, it won't be easy. I could do it because I do believe in forgiveness and the basic goodness of man.



Q. Okay. And that's - - you know, we hope everybody feels that way. Sometimes people in your situation don't feel that
way. 


A. Uh-huh.



Q. And I - - you know, I appreciate you being candid and telling us about it. But my main concern is this, this type offense
is almost- - - no, it's not. I can't say its identical, but it has the same elements as murder plus robbery.



A. Right.



Q. [G]iven the fact, the elements in the indictment are similar to what happened with your grandfather, do you feel like that
because of that, that could cause a problem for you? I mean, you say I think I can, I believe I can. But can you tell me today,
yes, I can, or can you only say, I'm not sure?



A. I can.



Q. Okay. You think you can?



A. (Nods head.)



Q. Can you say yes or no?



A. Yes, I can. 


Goldsmith unequivocally stated that she could put the experience of her grandfather's capital murder aside and could be fair
and impartial in judging the case. Appellant has not shown that Goldsmith had a bias that would substantially impair her
ability to carry out her oath and instructions in accordance with law. Feldman, 71 S.W.3d at 744. Appellant's first and
second points of error are overruled. 

CONSTITUTIONALITY AND RELATED ISSUES

In his third point of error, appellant claims that the lethal injection as it is currently administered in Texas violates the
Eighth Amendment because it produces unnecessary pain, torture, and lingering death. Appellant raised this issue in a
motion to set aside the indictment, but he failed to provide any evidence or further argument on the motion at trial. We
have previously concluded that we cannot address this type of claim when the record is not sufficiently developed. Bible v.
State, 162 S.W.3d 234 (Tex. Crim. App. 2005). We decline to reconsider our holding in Bible. 

Even if appellant's trial record had been fully developed, we still cannot address appellant's claim because it is not ripe for
review on direct appeal. In Colburn v. State, 966 S.W.2d 511 (Tex. Crim. App. 1998), appellant claimed that his sentence
was unconstitutional because he was mentally ill. We held that because appellant's execution was not imminent, his claim
was not ripe for review. We noted that the fact that the appellant had a mental illness when he was tried and sentenced was
not determinative of whether he will have a mental illness at the moment of his execution. Similarly, the method in which
the lethal injection is currently administered is not determinative of the way it will be administered at the moment of
appellant's execution. Thus, appellant's claim is not ripe for review. Appellant's third point of error is overruled. 

In his fourth point of error, appellant claims that the administration of the death penalty violates the Eighth and Fourteenth
Amendments of the United States Constitution because it is contrary to our "evolving standards of decency." Appellant
claims that the fact that innocent people who were subsequently exonerated have been sentenced to death makes the death
penalty an unconstitutional form of punishment, per se. While the execution of an innocent person would violate federal
due process and be considered cruel and unusual punishment, appellant does not claim that he is innocent or that he will be
exonerated. He therefore fails to demonstrate that his due process rights or his right to be free from cruel and unusual
punishment has been violated. Herrera v. Collins, 506 U.S. 390 (1993); Paredes v. State, 129 S.W.3d 530, 540 (Tex. Crim.
App. 2004). Appellant's fourth point of error is overruled. 

In his fifth through eleventh points of error, appellant makes various claims challenging the validity of the Texas
death-penalty scheme. In his fifth point of error, appellant claims that "[t]he trial court erred when it relieved the state of its
constitutional burden to prove insufficient mitigating factors beyond a reasonable doubt." He argues that the death penalty
scheme violates the United States Constitution because it does not require the State to prove the mitigation special issue
beyond a reasonable doubt. Appellant cites to Apprendi v. New Jersey, 530 U.S. 466 (2000), Ring v. Arizona, 122 S. Ct.
2428, 2440 (2002), and Blakey v. Washington, 124 S. Ct. 2531 (2004). In his sixth point of error, appellant claims that the
"12/10 rule" of the mitigation special issue violates various provision of the United States Constitution. In his seventh point
of error, appellant claims that the death penalty statute is unconstitutionally vague because it fails to define "probability of
committing future criminal acts of violence" in the future dangerous special issue. In his eighth point of error, appellant
claims that the death penalty scheme is unconstitutional because its definition of mitigating evidence limits the factors that
jurors are to consider when answering the mitigation question, citing Tennard v. Dretke, 542 U.S. 274 (2004). In his ninth
point of error, appellant claims that the death penalty scheme is unconstitutional because it does not require the jury to
consider evidence of mitigation. In his tenth point of error, appellant claims that the death penalty scheme is
unconstitutional because it provides the exact type of unfettered discretion prohibited in Furman v. Georgia. In his eleventh
point of error, appellant claims that the death penalty scheme is unconstitutional for its failure to provide "meaningful
appellate review." 

This Court has previously rejected all of these claims, and appellant gives us no reason to revisit these issues here. See
Perry v. State, 158 S.W. 3d 438, 446-7 (Tex. Crim. App. 2004), cert. denied, 126 S.Ct. 416 (2005); Blue v. State, 125
S.W.3d 491 (Tex. Crim. App. 2003), cert. denied, 543 U.S. 853 (2004); Ladd v. State, 3 S.W. 547 (Tex. Crim. App. 1999),
cert denied, 529 U.S. 1070 (2000); Escamilla v. State, 143 S.W.3d 814, (Tex. Crim. App. 2004), cert. denied, 125 S. Ct.
1697 (2005); Williams v. State, 692 S.W.2d 671 (Tex. Crim. App. 1984). Appellant's fifth through eleventh points of error
are overruled. 

We affirm the judgment of the trial court. 



DELIVERED MAY 10, 2006.



DO NOT PUBLISH 

1. Unless otherwise indicated, all references to Articles refer to the Texas Code of Criminal Procedure.