

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. AP-76,176

**MICHAEL DEAN GONZALES, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON DIRECT APPEAL FROM CAUSE NO. D-23,730
### IN THE 358TH JUDICIAL DISTRICT COURT
### ECTOR COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, KEASLER, COCHRAN and ALCALA, JJ., joined. COCHRAN, J., filed a concurring opinion. JOHNSON, J., filed a dissenting opinion. WOMACK, J., dissented.

### O P I N I O N

Appellant was convicted in December 1995 of capital murder. TEX. PENAL CODE

§ 19.03(a)(2). Based on the jury's answers to the special issues set forth in the Texas

Code of Criminal Procedure, Article 37.071, Sections 2(b) and 2(e), the trial judge

sentenced Appellant to death. Art. 37.071, § 2(g).[1] His conviction and sentence were affirmed on direct appeal. *Gonzales v. State,* No. AP-72,317 (Tex. Crim. App. June 3, 1998) (not designated for publication). Appellant's state application for habeas corpus relief was denied. *Ex parte Gonzales,* No. WR-40,541-01 (Tex. Crim. App. March 10, 1999) (not designated for publication). Appellant's federal petition for habeas corpus relief was denied as to his conviction but granted as to punishment, and the case was remanded for a new punishment hearing. *Gonzales v. Cockrell,* No. MO-99-CA-073 (W.D. Tex. December 19, 2002) (not designated for publication). The United States Court of Appeals for the Fifth Circuit affirmed the federal district court's judgment. *Gonzales v. Quarterman,* No. 03-50021 (5th Cir. July 31, 2006) (not designated for publication).

The trial court held a new punishment hearing in May 2009. Based on the jury's answers to the special issues, the trial judge sentenced Appellant to death. Art. 37.071, § 2(g). Direct appeal to this Court is automatic. Art. 37.071, § 2(h). After reviewing Appellant's five points of error, we find them to be without merit. Consequently, we affirm the trial court's judgment.

## I. JURISDICTION

In point of error one, Appellant claims that the trial court lacked jurisdiction to hold a new punishment hearing. He argues that the trial court lost jurisdiction over the

---

[1]Unless otherwise indicated all references to Articles refer to the Code of Criminal Procedure.

case when it filed the record with the appellate court after his conviction and sentence, and thus, it lacked jurisdiction to hold a new punishment hearing unless jurisdiction was returned to it by the federal district court's order granting habeas corpus relief as to punishment. He reasons that, because the clerk's record does not demonstrate that this order was received by the trial court, the trial court never obtained jurisdiction to hold the instant punishment hearing.

Appellant cites no authority directly on point for his position that the trial court lacked jurisdiction to commence a new punishment hearing unless the federal court's order was transmitted to the trial court. He analogizes the federal district court's order to an appellate court's mandate, which he contends must be received by the trial court before that court can assume jurisdiction over the case. *See* Tex. R. App. P. 25.2(g);[2] *Green v. State,* 906 S.W.2d 937, 939-40 (Tex. Crim. App. 1995). More specifically, Appellant relies on *Drew v. State,* 765 S.W.2d 533 (Tex. App.—Austin 1989), *pet. dism'd as improvidently granted,* 805 S.W.2d 451 (Tex. Crim. App. 1991), in which the court of appeals emphasized that, once the case is appealed, the trial court's jurisdiction is lost until it receives a mandate from the appellate court. However, Appellant's reliance on that case is misplaced. First, *Drew* occurred in the context of an appeal in the state courts, not writ applications in federal court. *Drew*, 765 S.W.2d at 534-35. In a federal writ

---

[2] Texas Rule of Appellate Procedure 25.2(g) provides, "Once the record has been filed in the appellate court, all further proceedings in the trial court–except as provided otherwise by the law or by these rules–will be suspended until the trial court receives the appellate-court mandate."

application, such as that here, the case is not filed with the state court, nor is the state court a party to the suit; a separate action is filed in federal court, and the respondent is the "person having custody of the person detained." 28 U.S.C. § 2243. Second, *Drew* discusses what a trial court may do while the appeal is pending, and in this case, there was no appeal pending when the trial court held a sentencing hearing. Third, in *Drew*, the State, before mandate had been issued on the previous indictment, obtained a new indictment for the same attempted capital murder charge upon which the defendant was tried and convicted. *Drew*, 765 S.W.2d at 534-35. Here, there was no new indictment; all of the proceedings were based upon the same indictment.

The federal district court's judgment, as affirmed by the Fifth Circuit, remanded the case for a new punishment hearing. Appellant concedes that the federal district court granted the writ as to "all sentencing issues" and remanded the cause to the "358th District Court in Odessa, Ector County, Texas." Appellant also included a copy of the Fifth Circuit Court of Appeals's Judgment in the federal writ case, which affirmed the judgment of the District Court and explicitly stated, "ISSUED AS MANDATE: AUG 30, 2006."[3] Article 44.29(c) provides, in relevant part,

> If any court sets aside or invalidates the sentence of a defendant convicted of an offense under Section 19.03, Penal Code, and sentenced to death on the basis of any error affecting punishment only, the court shall not set the conviction aside but rather shall commence a new punishment hearing under Article 37.071 or Article 37.0711 of this code, as appropriate, as if a

---

[3]Under Rule 41 of the Federal Rules of Appellate Procedure, "[t]he mandate is effective when *issued*." FED. R. APP. P. 41(c) (emphasis added).

finding of guilt had been returned.

This statutory provision makes no mention of the transmittal or receipt of a court order. The mandate for the court to commence a new punishment hearing is not conditioned on such receipt, and we do not read that condition into the statute today. So long as the federal district court's order set aside or invalidated the death sentence, then the trial court's action was authorized.

Appellant does not dispute that the order set aside or invalidated the sentence. Consequently, the trial court's jurisdiction was restored as to the issue of punishment, and the trial court had no choice but to conduct a trial on punishment—it was required to commence a new punishment hearing "as if a finding of guilt had been returned." Art. 44.29(c).

Appellant argues in the alternative that the federal district court's order did not confer jurisdiction to hold a new punishment hearing because the order "is void on its face." Appellant asserts only that the federal district court did not have the power to grant a new sentencing hearing. Appellant is apparently complaining about the language used in the order commanding the trial court to hold a new sentencing hearing.

Appellant cites to *Moore v. Johnson,* 194 F.3d 586, 622 (5th Cir. 1999), for its holding that when federal habeas relief in a capital case is limited to punishment, the proper course is to permit the state court a reasonable time in which to decide whether to hold a new trial limited to punishment or to vacate the death sentence and impose a life

sentence. Similar to *Moore*, Appellant's case was appealed to the United States Court of Appeals for the Fifth Circuit after Appellant obtained habeas corpus relief limited to punishment in the district court. *See id.* However, unlike in *Moore*, the parties in this case did not complain about the language of the federal district court's order in the appeal to the Fifth Circuit. *See id.* Appellant also failed to call this alleged error to the attention of the trial court. In any event, this assertion fails to demonstrate that the order is void.[4] As discussed above, so long as the federal district court's order set aside or invalidated the sentence, Article 44.29(c) authorized the trial court's action. Point of error one is overruled.

## II. CHALLENGES FOR CAUSE

In points of error two and three, Appellant claims that the trial court erred when it denied his challenges for cause to venirepersons Sarah Murdock and Randall Phillips.

The issue is whether the trial court's rulings on Appellant's challenges for cause harmed Appellant by effectively depriving him of one of his statutorily allotted peremptory challenges. *See Newbury v. State*, 135 S.W.3d 22, 30-31 (Tex. Crim. App. 2004); *Johnson v. State*, 43 S.W.3d 1, 6 (Tex. Crim. App. 2001). Harm from the erroneous denial of a defense challenge for cause focuses on whether a peremptory challenge "was wrongfully taken from" the defendant. *Johnson*, 43 S.W.3d at 6. Such

---

[4] In general, an order is void when the court that entered it lacked jurisdiction of the subject matter or of the parties, lacked jurisdiction to enter the order, or lacked the capacity to act as a court. *See, e.g., Nix v.* State, 65 S.W.3d 664, 668 (Tex. Crim. App. 2001); *Browning v. Placke,* 698 S.W.2d 362, 363 (Tex. 1985).

harm occurs "(1) when a defendant exercises a peremptory challenge on a veniremember whom the trial court should have excused for cause at the defendant's request, (2) the defendant uses all of his statutorily allotted peremptory challenges, and (3) the defendant unsuccessfully requests an additional peremptory challenge which he claims he would use on another veniremember whom the defendant identifies as 'objectionable' and who sits on the jury." *Newbury*, 135 S.W.3d at 31. When these conditions are met, we have stated that the trial court's erroneous denial of a defense challenge for cause harms the defendant by effectively depriving him of one of his statutory peremptory challenges because "he had to use a peremptory challenge to remove a veniremember who should have been removed for cause." *Id.*

When a defendant has been granted one additional peremptory challenge, then he could not have been effectively deprived of a statutorily allotted peremptory challenge from the trial court's erroneous denial of only one defense challenge for cause. *Id.* Under these circumstances, the defendant must show that the trial court erroneously denied his challenges for cause to two veniremembers to demonstrate harm. *Id.*

The record reveals that after his challenges for cause were denied, Appellant used peremptory strikes to exclude Murdock and Phillips. He exhausted all of his peremptory strikes and was granted one additional strike. After using the additional strike, Appellant requested additional peremptory strikes against venirepersons he identified as objectionable. His requests were denied, and those venirepersons were seated on the jury.

Still, because the trial court granted one additional strike, Appellant must show that the trial court committed error in denying his challenges for cause to two venirepersons in order to demonstrate that he was harmed. *See Busby v. State,* 253 S.W.3d 661, 673 n.12 (Tex. Crim. App. 2008); *Newbury*, 135 S.W.3d at 31.

We look at the entire record of voir dire to determine if the evidence is sufficient to support the court's ruling on a challenge for cause. *Feldman v. State,* 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). We afford great deference to the trial court's decision because the trial judge is present to observe the demeanor of the venireperson and to listen to his tone of voice. *Id.* Particular deference is due when the venireperson's answers are "vacillating, unclear, or contradictory." *Davis v. State*, 313 S.W.3d 317, 344 (Tex. Crim. App. 2010); *Moore v. State,* 999 S.W.2d 385, 400 (Tex. Crim. App. 1999). Consequently, we will reverse a trial court's ruling on a challenge for cause only if a clear abuse of discretion is evident. *Davis*, 313 S.W.3d at 344.

A venireperson is challengeable for cause if he or she has a bias or prejudice against the defendant or against the law upon which either the State or the defense is entitled to rely. Art. 35.16(b)(3) & (c)(2); *Gardner v. State,* 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). The test is whether the venireperson's "bias or prejudice would substantially impair [his] ability to carry out his oath and instructions in accordance with the law." *Feldman,* 71 S.W.3d at 744. To establish that the challenge for cause is proper, the proponent of the challenge must show that the venireperson understood the

requirements of the law and could not overcome his prejudice well enough to follow the law. *Id.* at 747. So before a venireperson may be excused for cause on this basis, the law must be explained to him, and he must be asked whether he can follow that law, regardless of his personal views. *Id.* at 744.

Appellant's second point of error concerns venireperson Murdock. To begin, Appellant argues that, based upon her answers, Murdock could not afford Appellant the right to remain silent and would shift the burden of proof to Appellant on the issue of future dangerousness.[5] The record supports that Murdock was not challengeable on these bases. Her statements were based on a misunderstanding of the law. This was overcome

---

[5]The record reflects that Appellant challenged Murdock for the following reasons:

[DEFENSE]: Your Honor, we would challenge Ms. Murdock for cause on the basis that she -- her testimony, depending on which time you focus on, but in response to defense question, she said that she would want to hear an expression of remorse from the defendant in open court and would consider that in assessing whether or not he should get the maximum punishment so that the grounds is that she would not be able to disregard his failure to testify.

Secondly, we would challenge her on the basis that she is a burden shifter. That is, that she would both want to hear from the defense and the defense to present some evidence that she -- that Mr. Gonzales was not a future danger, even if the State had not proven his future danger beyond a reasonable doubt.

And secondly [sic], that she would consider Mr. Gonzales's failure to present any evidence to the contrary in deciding or in determining whether or not the State had met its burden of proof beyond a reasonable doubt.

And thirdly, that Ms. Murdock has stated that she would -- felt like the fact that life was not life without parole would -- parole eligibility would be -- would affect her decision in answering the special issues. Under those three grounds we would lodge a challenge for cause against her, Your Honor.

when the law was explained to her, and her understanding of the law as to those issues was corrected. For example, Murdock testified to the following:

Q. [STATE]: Okay. So that is one of the reasons why the judge would instruct you if he doesn't testify, that that cannot be taken as evidence against him in any way. You couldn't use that as any kind of evidence to justify a verdict one way or the other. Does that make sense?

A. [MURDOCK]: Okay.

Q. Do you follow that law?

A. Yes, I do.

\* \* \*

Q. [STATE]: So what [the defense] was asking you is, would you nevertheless find him guilty of being dangerous even though the State has failed to show beyond a reasonable doubt that he is?

A. No.

Q. No, okay. Do you understand--

A. Yeah, I am starting to understand, yeah.

Q. Okay. And like I say, I want to make sure. I am not trying to change your mind about anything, I am trying to make sure we are all clear--

A. Right.

Q. -- on what you meant by that?

A. Uh-huh.

Q. And so do you feel like you are no longer confused about that?

A. Yes, I am okay with that now, yeah.

\* \* \*

Q. [DEFENSE]: . . . I thought you said was that in deciding whether the State had proved future danger to you beyond a reasonable doubt, that you

would consider in deciding whether the State had met its burden, the fact that the defendant had not presented any evidence that he was not a future danger.

A. Okay. I guess it would be because I did not understand the burden of proof on the State's part.

Q. Okay.

A. And so therefore now I understand that they have to prove, you know, that he is not a danger now and if your people didn't say anything about it, then I would say no. I mean, you know, I wouldn't have to go on to the second one.

Appellant further argues that Murdock was challengeable because the issue of parole would affect her answers on the special issues (i.e., whether she would sentence Appellant to death out of a concern that he might eventually be released on parole if sentenced to life). Again, the record supports that Murdock was not challengeable on this basis. The State on direct examination questioned Murdock regarding whether her feelings about parole would affect her answers to the special issues. Murdock testified that she understood how the parole law operated when the State explained it to her.[6] She also stated, "I believe in the death penalty," and she expressed some concern that, if leniency was shown to a murderer, it would be unfair to the families of victims. Yet, Murdock affirmed that she could be fair.

Q. [STATE]: . . . So the question becomes, although you feel that way, could you, if you were selected as a juror, take the oath, follow the oath as

_____

[6]In summary, this was that a life-sentenced defendant would be parole-eligible in 40 years and that the Board of Pardons and Paroles would determine whether a life-sentenced defendant would be released on parole once he became parole-eligible.

the Court gives it to you, and answer the special issues, knowing that the answers to those special issues may result in a life sentence, that you would be willing to answer those special issues honestly according to the evidence and not, you know, not prejudge them, as we talked about before.

A. [MURDOCK]: Yes.

Q. You could take the oath and give a fair trial to the defendant?

A. Yes.

Murdock then testified:

Q. [STATE]: Okay. Understanding that, the concern would be, obviously, from the defendant's prospective [sic], that you would be unwilling to answer the questions in such a way that a life sentence would result because you are opposed to this idea that he might receive parole eventually?

A. [MURDOCK]: Correct.

Q. That you would not render a true verdict based on the law and the evidence, but you would render a verdict solely with an aim towards preventing him from ever getting a life sentence. Do you see how your feelings on that parole issue might cause him to think that you would do that.

A. Yes, I see.

Q. So what are your thoughts about that?

A. I just -- I can't change the way I think.

Q. And nobody is asking you to do that. What I am suggesting is that, you know, when you answer the question about the continuing threat to society.

A. Uh-huh.

Q. Obviously, the risk that the defendant would ever be out of prison or how long he is going to remain in prison may be an element to that. Okay?

A. Uh-huh.

Q. And that is something that you can certainly think about. Then when we get to the mitigation question in terms of whether there are mitigating circumstances that are sufficient to justify a life sentence, again, you would think about that as well. You know, whatever the mitigating circumstances are, do they justify a life sentence in light of whatever kind of danger the defendant represents, whatever kind of crime he committed, and all those other things. But I think what -- what we would not want you to do is to authorize a death sentence on somebody who would not otherwise be justified in being executed under those special issues just because you wanted to avoid the parole issue. Do you understand what I am saying?

A. Yes, I do.

Q. In other words, if a juror is going to say, well, I think the defendant deserves a life sentence but I don't think it should be with 40 years, so I am going to give him a death sentence instead.

A. Oh, yes.

Q. You see how that's --

A. Yes.

Q. That's not -- that is not the kind of issue that we are asking you to look at in this case and that would be -- I think that would be an improper verdict. That wouldn't be following your oath if you were to do that.

A. I understand that.

Q. You can consider the parole law but you shouldn't answer the questions differently simply because you are concerned about -- you know, if you think a life sentence is appropriate, then that is what the case should result in, not, I think a life sentence is appropriate but I am going to give him a death sentence because I don't want him to ever get parole.

A. I understand.

Q. Okay. You have to just kind of trust that if the defendant doesn't

rehabilitate and doesn't deserve parole, that he just never get [sic] it, but without having any individual control of that. Does that make sense?

A. Yes.

Q. Do you think you can follow that law?

A. I could, yes.

On cross-examination by the defense, Murdock stated that the possibility that a life-sentenced Appellant could make parole "might influence" or "might affect" her answers to the special issues.

> Q. [DEFENSE]: . . . And I worry that some people might think if I don't -- am not a hundred percent sure that he is never going to get out, that life without -- that life means life without parole, that's -- that nagging concern about him getting out at some future date is going to influence my decision on whether to give him life.
>
> A. [MURDOCK]: Uh-huh.
>
> Q. How to answer the special issues. Do you see what I am saying there?
>
> A. Uh-huh.
>
> Q. How do you feel about that?
>
> A. Well, if it was never proven to me, then, you, know, or that he would never get out on parole or something like that, I mean, you know, I don't know. I am confused now.
>
> Q. Sure.
>
> A. I'm sorry. I could give life if I knew that he wasn't going to get out on parole. Let me put it that way.
>
> Q. Okay. Well --

A. But that can't be -- that can't be assured.

Q. Right. So my question is would the possibility, however, slim, that he would get out on parole --

A. Uh-huh.

Q. -- at some future date, would that be something that you could completely put out of your mind, or are you concerned that you -- are you concerned that it might be in the back of your mind and might influence your decision in answering the special issues?

A. Yes, it would.

Q. I mean, the judge is going to tell you that you can't consider -- that is strictly up to the Board of Pardons and Paroles, but that is asking a lot of people and I know nobody can, I guess, knows how they are going to react until they are in that kind of situation, but it sounds to me as if that is something, given your feelings about the death penalty, that you are -- you would have doubts about your ability to ignore the issue that -- of parole eligibility down the line; is that right?

A. Yes, sir.

Q. And you think that might affect your decision -- your answers to the special issues.

A. Yes, sir.

On redirect examination by the State, Murdock testified:

Q. [STATE]: . . . So what I want to focus in on right now is on this parole issue. The judge will instruct you you can consider the existence of parole, and we talked a little bit about how that might play into some of these issues. But you should not be answering these questions based on the fact that a life sentence might result in the defendant being released on parole at some future date. In other words, you should not answer the future danger question with a yes just because you think he might get out on parole. Likewise, you should not answer the mitigating circumstances question with a no just because you think at some point he might get released on

parole. You should answer those questions instead based on whatever evidence the State can show you that he is a danger or whatever mitigating circumstances evidence there is. Do you see what I am saying?

A. Yes.

Q. And not answer the question just to make sure that there is a death sentence because you don't like the idea of parole.

A. Okay.

Q. Okay?

A. I understand.

Q. [The defense] asked you that question, whether you could put that out of your mind. That is what he was talking about. Talking about putting it out of your mind, what he was saying is, can you answer these questions. Not can you just forget about it because, obviously, we don't expect -- I don't expect anything that we tell you in court is something you are just going to be able to completely forget by the end of the trial. But we do expect you to be able to, you know, if you have a particular feeling about parole, that that will not affect your ability to follow your oath.

A. Okay.

Q. And that's -- so do you think that you can -- if the -- if you take the oath to render a true verdict based on the law and the evidence can you do that despite your feelings about parole?

A. Yes.

Finally, on re-cross examination by the defense, Murdock ultimately stated that her feelings about parole would *not* affect her answers to the special issues.

Q. [DEFENSE]: All right. With regards to -- with regard to the issue of life not being life without parole, I understood you to say that that would be of concern, that you could not put that out of your mind, that that might be in the back of your mind, and that that might affect your answers to these

special issues, the possibility that he might get out at some future date.

A. I still feel strongly on that yes.

Q. You still feel strongly?

[THE COURT]: I am going to interrupt . . . . I don't think the law is that she must put it out of the back of her mind, or put it out of her mind. I believe the law is that it is whether or not she will consider it in answering these, or will she follow the oath that she took.

You remember [the defense's] presentation to you earlier where he told you that you could be against the death penalty and still serve on a jury.

A. Uh-huh.

[THE COURT]: **I am saying to you that you can still have very strong feelings about the death penalty and still follow the law and follow the instructions of the Court and follow your oath.**

A. (Nodded affirmatively.)

[THE COURT]: **And what I have got to know, will you do that?**

A. **Yes, I will do that.**

[THE COURT]: All right. Go ahead, sir.

Q. [DEFENSE]: Well, my concern, I guess, is when you said when we were talking, you said you still felt strongly about that. My concern is this: I don't want to be in a situation where, as I said -- and I'm sorry to belabor the issue. But you have found Mr. Gonzales, beyond a reasonable doubt, you have found there is a probability he will be a future danger. **Would your decision then whether or not to return a verdict, a life verdict rather than the death verdict, would it be affected by -- that decision, would that be affected by the possibility that he could get out at some future date?**

A. **No.**

Q. **It would not?  That would not affect your decision?**

A. **No.**

[DEFENSE]: That is all we have, Your Honor.

(Emphasis added).

The trial judge overruled Appellant's challenge for cause regarding Murdock, stating that he was "of the opinion that there was some confusion by the juror.  However, I believe, having listened to her questions and questioned her answers to the Court, is of the opinion that she is qualified."

Under the well-settled appellate standard of review to a trial court's ruling on a challenge for cause, it should be apparent that the trial court did not clearly abuse its discretion to decide that Murdock was not challengeable for cause on the basis that her feelings about the parole law would affect her answers to the special issues.[7]  *See Newbury*, 135 S.W.3d at 32.  Murdock affirmed that she understood the requirements of and would follow the law.  Although Murdock stated that she had strong feelings about parole, she also asserted that those strong feelings would not affect her answers to the

---

[7]The dissent argues that its conclusion that Murdock was challengeable for cause is supported by *Morgan v. Illinois*, 504 U.S. 719 (1992).  *Morgan* stands for the proposition that parties should be permitted to ask questions about a veniremember's biases against the law. Appellant was allowed to ask such questions.  To the extent that *Morgan* stands for the proposition that a juror is challengeable for cause if he would automatically assess a sentence of death, *Morgan* is not on point here because at the end of the questioning, Murdock said that she could follow the law, follow the instructions of the court, and follow her oath.  The trial judge was entitled to believe her, and we defer to that belief.

special issues. The portions of the record set out above (particularly her responses to the last two questions from the defense on re-cross examination) clearly indicate that Murdock's feelings about parole would not affect her answers to the special issues. Point of error two is overruled.

Because Appellant has not shown that the trial court improperly denied his challenges to at least two venirepersons, he cannot show reversible error. *See Feldman,* 71 S.W.3d at 748. Therefore, we need not address his third point of error regarding venireperson Phillips, and it is overruled.

### III. 12-10 RULE

In point of error four, Appellant claims that the trial court erred in overruling his motion to declare the 12-10 Rule unconstitutional. He asserts that the 12-10 Rule violates the Eighth and Fourteenth Amendments to the United States Constitution because it provides misleading information to the jurors and prohibits the court and the parties from correcting the misinformation. He reasons that the 12-10 Rule creates an unacceptable risk that jurors who find sufficiently mitigating factors will be unable to give effect to their findings if they are in the minority "or a holdout of one." We have rejected Appellant's arguments in previous cases. *See, e.g., Druery v. State,* 225 S.W.3d 491, 509 (Tex. Crim. App. 2007); *Prystash v. State,* 3 S.W.3d 522, 536 (Tex. Crim. App. 1999). We are not persuaded to revisit them here. Point of error four is overruled.

### IV. EXECUTION PROTOCOL

In point of error five, Appellant claims that the trial court erred when it denied his motion to declare the death penalty unconstitutional based on Texas's lethal injection protocol. He asserts that the use of pancuronium bromide in the lethal injection protocol violates the Eighth Amendment of the United States Constitution and Article I, Section 13, of the Texas Constitution.[8]

Appellant's execution is not imminent. Therefore, the method in which the lethal injection is currently administered is not determinative of the way it will be administered at the moment of Appellant's execution. This claim is not ripe for review. *See Gallo v. State,* 239 S.W.3d 757, 780 (Tex. Crim. App. 2007). Point of error five is overruled.

We affirm the judgment of the trial court.

Hervey, J.

Delivered: September 28, 2011

Publish

---

[8] Appellant acknowledges the Supreme Court's decision in *Baze v. Rees,* 1553 U.S. 35 (2008), holding that the Kentucky lethal-injection protocol, which is very similar to the Texas protocol, does not violate the Eighth Amendment. *Id.* at 57-58.