

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00214-CR

---

NACXELI MIORALES, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the County Court at Law No. 2
Lubbock County, Texas
Trial Court No. CC-2023-CR-0110; Honorable Tom Brummett, Presiding

---

February 4, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant, Nacxeli Miorales,[1] appeals from her conviction for driving while intoxicated. Though initially charged with Class A misdemeanor DWI for having a breath alcohol concentration of 0.15 or higher,[2] a jury found her guilty of the lesser-included Class B misdemeanor offense.[3] The trial court assessed punishment at 180 days in jail,

---

[1] Although the record indicates Appellant's surname is properly spelled "Morales," we use "Miorales" to maintain consistency with the charging instrument, jury charge, and judgment.

[2] *See* TEX. PENAL CODE ANN. § 49.04(a),(d) (providing offense is a Class A misdemeanor).

[3] *See* TEX. PENAL CODE ANN. § 49.04(a),(b) (providing offense is a Class B misdemeanor).

probated for 18 months.  In five issues, Appellant challenges the denial of challenges for cause to four potential jurors and alleges a violation of her confrontation rights.  We affirm.

## Analysis

Because Appellant does not challenge the evidence supporting her conviction, we address only the facts relevant to her issues.

### Issues 1–4: Jury Selection Challenges

In her first four issues, Appellant claims the trial court wrongly denied her challenges for cause to venirepersons Sprabeary, Hough, Woodward, and Rackler.  To preserve such complaints, she needed to demonstrate that she: (1) made a clear and specific challenge for cause that was denied; (2) used a peremptory strike on the complained-of venireperson; (3) exhausted all peremptory challenges; (4) requested and was denied additional strikes; and (5) showed an objectionable juror sat on the jury. *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).  These requirements ensure the trial court can address and cure any error.  *Comeaux v. State,* 445 S.W.3d 745, 749 (Tex. Crim. App. 2014).

The record contains no strike lists.  Therefore, Appellant cannot show she used peremptory strikes on any challenged venire members or exhausted her strikes.  This failure waives her complaints about the trial court's rulings on jury selection.  *See Henderson v. State,* Nos. 07-22-00303-CR, 07-22-00304-CR, 07-22-00305-CR, 2023 Tex. App. LEXIS 8617, at *30 (Tex. App.—Amarillo Nov. 15, 2023, pet. ref'd) (mem. op., not designated for publication)*, cert. denied,* ___ U.S. ___, 2024 U.S. LEXIS 3871 (Oct. 7, 2024).

2

Even assuming Appellant preserved error by using two of her three[4] peremptory strikes on Hough and Woodward, we find no reversible error in the trial court's rulings. When reviewing denial of a challenge for cause, we examine the entire voir dire record to determine if sufficient evidence supports the ruling. *Gonzales v. State,* 353 S.W.3d 826, 831 (Tex. Crim. App. 2011). Because trial courts are best positioned to evaluate a venireperson's demeanor and credibility, we review these decisions for abuse of discretion. *Cantu v. State,* 842 S.W.2d 667, 682 (Tex. Crim. App. 1992). This standard is particularly deferential when a venireperson's answers are vacillating or unclear, because factors like demeanor and tone of voice do not appear in our record. *Id*. (citing *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000); *Banda v. State,* 890 S.W.2d 42, 54 (Tex. Crim. App. 1994)).

Venireperson Hough

Hough's responses about a defendant's right not to testify evolved during voir dire. He initially expressed concern, stating "I think [defendants] don't want to tell the truth if they don't take the stand." However, after the court explained that an accused cannot be compelled to testify and that the State must meet its burden of proof, Hough shifted his position. When asked directly how he would vote if the State failed to prove guilt beyond reasonable doubt, Hough stated, "If they didn't prove she was guilty, then she would be not guilty."

Later questioning, however, revealed some continued equivocation. Discussing a hypothetical breathalyzer result, Hough remarked that absent contrary evidence, he

---

[4] By statute, Appellant was entitled to three peremptory strikes. *See* TEX. CODE CRIM. PROC. ANN. art. 35.15(c).

would likely trust a properly functioning machine. He added, "To defend your client, you should have something."

While a prospective juror showing bias against the law must be excused if challenged, *Rios v. State,* No. 07-04-00276-CR, 2005 Tex. App. LEXIS 8631, at *8 (Tex. App.—Amarillo Oct. 19, 2005, no pet.) (mem. op., not designated for publication), we give particular deference to trial court rulings on vacillating venire members. *Soto-Hernandez v. State,* No. 07-18-00391-CR, 2020 Tex. App. LEXIS 1094, at *9 (Tex. App.—Amarillo Feb. 6, 2020, no pet.) (mem. op., not designated for publication); *Perillo v. State,* 758 S.W.2d 567, 577 (Tex. Crim. App. 1988) (en banc) (in the case of a vacillating venire member, the record supports the trial court's ruling either way, which means the decision of the trial court is not wrong). Here, despite some equivocation, Hough demonstrated an understanding of the law and willingness to apply it. We find no abuse of discretion in denying Appellant's challenge to venire member Hough. *See Johnson v. State*, No. 01-11-00192-CR, 2012 Tex. App. LEXIS 8325, at *12–13 (Tex. App.—Houston [1st Dist.] Oct. 4, 2012, pet. ref'd) (mem. op., not designated for publication) (deferring to trial court where vacillating venireperson initially expressed concern about defendant's refusal to testify but later agreed to follow the law after court's explanation).

Venireperson Woodward

Woodward disclosed knowing the prosecutor through their former church, where she had provided premarital counseling. When asked about this relationship's impact on her impartiality, her responses became increasingly definitive. Woodward initially answered she thought she could remain impartial, which moved to "yes," she could. She

4

also made an unequivocal denial—"No, it would not"—when the trial court asked if her acquaintance with the prosecutor would impair her ability to serve fairly.

When asked if she could reach a verdict "based solely on the evidence that you observed and the law that you were given in this case," Woodward responded, "I believe so, but I mean, to say that we never recognize our biases, you know, but I believe—I believe that I could." The trial court pressed for clarity, asking, "I need a yes or no answer whether that knowledge of those individuals would impair your ability to be a fair and impartial juror in this case?" Woodward responded firmly, "No, it would not."

During another portion, when defense counsel pressed further about whether she could set aside this relationship, Woodward initially said, "I don't believe it would be too tough," before stating more definitively, "It would not be too tough."

Mere acquaintance or friendly relations with a party does not automatically disqualify a juror. *Anderson v. State*, 633 S.W.2d 851, 853 (Tex. Crim. App. [Panel Op.] 1982). Here, while Woodward had provided counseling services to the prosecutor at their former church, the connection was past tense—the prosecutor no longer attended that church. More importantly, Woodward ultimately gave unequivocal assurances of her impartiality.

We find this situation similar to that presented to our sister court in *Tolliver v. State,* No. 14-93-00246-CR, 1995 Tex. App. LEXIS 1558, at *12 (Tex. App.—Houston [14th Dist.] July 13, 1995, no pet.) (not designated for publication). There, during voir dire, a prospective juror disclosed casually knowing the prosecutor. The venireperson initially

hedged, saying he "hoped" he could be fair but might favor the prosecutor's statements.[5] However, when pressed further, he affirmed his ability to set aside the acquaintance and decide the case on evidence alone.[6]

Similarly here, while Woodward first equivocated, she ultimately gave clear assurances of impartiality. Under these circumstances, we find no abuse of discretion in denying the challenge to Woodward. 1995 Tex. App. LEXIS 1558, at *15. *See also Suniga v. State,* No. AP-77,041, 2019 Tex. Crim. App. Unpub. LEXIS 128, at *124 (Tex. Crim. App. Mar. 6, 2019) (per curiam) (op. on reh'g).

We overrule Appellant's first four issues on appeal.

---

[5] *Tolliver* included the following exchange between defense counsel and the venire member:

[DEFENSE COUNSEL]: You're not sure at this time how much it would affect you, is that correct?

PROSPECTIVE JUROR: I would hope I would be a fair juror but I also want it to be known that I have spent some time with Mr. Bennett [the prosecutor].

[DEFENSE COUNSEL]: Let me ask you this, do you think you could judge the State's case and any witnesses by the—offered by the defense or the defendant without consideration of any prior social contact with Mr. Bennett? Put a bag over his head. If you're unable to set that aside or if it would influence you one way or the other we just want to know about it in all fairness.

PROSPECTIVE JUROR: I would hope that I would. The moral and ethical side of me wants to say yes but I also feel like I may give more credibility to what he would have to say.

1995 Tex. App. LEXIS 1558, at *12–13 (brackets in original).

[6] Again, according to *Tolliver*:

THE COURT: You're a lawyer. I just want—question I want to know is can you set aside the fact that you know the lawyer in the case and know the lawyer on one side and not the other and simply render a fair and impartial verdict based on the law and evidence?

PROSPECTIVE JUROR: Yes, I can, Your Honor.

*Id.* at *15.

<u>Fifth Issue: Confrontation Clause</u>

In her final issue, Appellant challenges testimony from Department of Public Safety technical supervisor Zachary Kilborn about reliability of the Intoxilyzer 9000, the device used to analyze Appellant's breath specimen. Over objection, Kilborn testified about Appellant's breath results (0.150 and 0.152 grams per 210 liters) and the machine's proper function, though he lacked personal knowledge of its certification and maintenance. Appellant argues this violated her confrontation rights.

The State needed to prove Appellant (1) operated a motor vehicle (2) in a public place (3) while intoxicated. TEX. PENAL CODE ANN. § 49.04(a). For Class A misdemeanor DWI, the State also needed to prove a blood-alcohol concentration of 0.15 or more. *Id.* § 49.04(d). The jury found Appellant guilty only of Class B misdemeanor DWI, implicitly rejecting the higher concentration element. Because the jury did not rely on the challenged breath-test evidence, we conclude beyond reasonable doubt that any confrontation error was harmless. *See* TEX. R. APP. P. 44.2(a).

Appellant's fifth issue is overruled.

**Conclusion**

Having overruled each of Appellant's issues, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

Do not publish.

7